UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

UNITED STATES OF AMERICA, *ex rel*.          :     **RELATOR'S COMPLAINT**
SFN PARTNERS, LLC,

                                   :     **FILED UNDER SEAL**
       Plaintiff,                              **PURSUANT TO**
                                   :     **31 U.S.C. § 3730**

       v.

                                   :     JURY TRIAL DEMANDED

POST ACUTE PARTNERS, LLC; 1 BETHESDA
DRIVE OPERATING COMPANY LLC, d/b/a          :     20 Civ. _____
ELDERWOOD AT HORNELL; 1019 WICKER
STREET OPERATING COMPANY LLC, d/b/a         :
ELDERWOOD AT TICONDEROGA; 104 OLD
NIAGARA ROAD OPERATING COMPANY              :
LLC, d/b/a ELDERWOOD AT LOCKPORT; 112
SKI BOWL ROAD OPERATING COMPANY LLC;        :
d/b/a ELDERWOOD AT NORTH CREEK; 170
WEST AVENUE OPERATING COMPANY, LLC, :
d/b/a ELDERWOOD OF LAKESIDE AT
BROCKPORT; 1818 COMO PARK BOULEVARD:
OPERATING COMPANY LLC, d/b/a
ELDERWOOD AT LANCASTER; 185 OLD             :
MILITARY ROAD OPERATING COMPANY
LLC, d/b/a ELDERWOOD OF UIHLEIN AT          :
LAKE PLACID; 200 BASSETT ROAD
OPERATING COMPANY LLC, d/b/a                :
ELDERWOOD AT WILLIAMSVILLE; 225
BENNETT ROAD OPERATING COMPANY              :
LLC, d/b/a ELDERWOOD AT CHEEKTOWAGA;
2600 NIAGARA FALLS BOULEVARD                :
OPERATING COMPANY, LLC, d/b/a
ELDERWOOD AT WHEATFIELD;                     :
2850 GRAND ISLAND BOULEVARD
OPERATING COMPANY LLC,  d/b/a               :
ELDERWOOD AT GRAND ISLAND;
37 NORTH CHEMUNG STREET OPERATING           :
COMPANY, LLC, d/b/a ELDERWOOD AT
WAVERLY; 4459 BAILEY AVENUE                 :
OPERATING COMPANY LLC, d/b/a
ELDERWOOD AT AMHERST; 4800 BEAR             :
ROAD OPERATING COMPANY LLC, d/b/a
ELDERWOOD AT LIVERPOOL; 981 KINGS           :
TOWN ROAD OPERATING COMPANY LLC,

d/b/a ELDERWOOD OF SCALLOP SHELL AT     :
WAKEFIELD; 5575 MAELOU DRIVE
OPERATING COMPANY LLC, d/b/a            :
ELDERWOOD AT HAMBURG; 98 STARR
FARM ROAD OPERATING COMPANY LLC,        :
d/b/a ELDERWOOD AT BURLINGTON;
111 ENSMINGER ROAD OPERATING            :
COMPANY, LLC, d/b/a ELDERWOOD
ASSISTED LIVING AT TONAWANDA;           :
245 BASSETT ROAD OPERATING COMPANY
LLC, d/b/a ELDERWOOD VILLAGE AT         :
BASSETT PARK; 5271 MAIN STREET
OPERATING COMPANY LLC, d/b/a            :
ELDERWOOD VILLAGE AT WILLIAMSVILLE;
580 ORCHARD PARK ROAD OPERATING         :
COMPANY LLC, d/b/a ELDERWOOD
ASSISTED LIVING AT WEST SENECA; 76      :
BUFFALO STREET OPERATING COMPANY
LLC, d/b/a ELDERWOOD ASSISTED LIVING    :
AT HAMBURG; 1404 LONG POND ROAD
OPERATING COMPANY LLC, d/b/a            :
ELDERWOOD VILLAGE AT GREECE; 229
BENNETT ROAD OPERATING COMPANY          :
LLC, d/b/a ELDERWOOD ASSISTED LIVING AT
CHEEKTOWAGA; 2600 NIAGARA FALLS         :
BOULEVARD AL OPERATING COMPANY LLC,
d/b/a ELDERWOOD ASSISTED LIVING AT      :
WHEATFIELD; 44 BALL STREET OPERATING
COMPANY LLC, d/b/a ELDERWOOD ASSISTED:
LIVING AT WAVERLY; 505 CLUBHOUSE
ROAD OPERATING COMPANY LLC, d/b/a       :
ELDERWOOD VILLAGE AT VESTAL; 626
WATERVLIET SHAKER ROAD OPERATING        :
COMPANY LLC, d/b/a ELDERWOOD VILLAGE
AT COLONIE; 7 CHARDONNAY DRIVE          :
OPERATING COMPANY LLC, d/b/a
ELDERWOOD VILLAGE AT FAIRPORT; POST :
ACUTE PARTNERS MANAGEMENT, LLC;
ELDERWOOD ADMINISTRATIVE SERVICES,  :
LLC; ELDERWOOD DEVELOPMENT, LLC;
ELDERWOOD STAFFING SOLUTIONS, LLC;      :
PP PEDIATRIC MANAGEMENT LP;
WOODMARK PHARMACY OF CT, LLC;           :
WOODMARK PHARMACY OF
MASSACHUSETTS, LLC; WOODMARK            :
PHARMACY OF NEW YORK, LLC; 3300

HENRY AVENUE OPERATING COMPANY, LP; :
120 RIDER AVENUE OPERATING COMPANY,
LP; 2900 JOHNSON STREET OPERATING          :
COMPANY, LP; 120 RIDER AVENUE PCH
OPERATING COMPANY, LP; and                 :
WARREN COLE and DR. JEFFREY RUBIN,
in their individual capacities,            :

       Defendants.                          :

---------------------------------------------------------------X

     Plaintiff-Relator SFN Partners, LLC ("Plaintiff-Relator"), by its attorney, Heidi A.

Wendel, Law Office of Heidi A. Wendel PLLC, files this Complaint against Post Acute Partners,

LLC; 1 Bethesda Drive Operating Company LLC, d/b/a Elderwood at Hornell; 1019 Wicker

Street Operating Company LLC, d/b/a Elderwood at Ticonderoga; 104 Old Niagara Road

Operating Company LLC, d/b/a Elderwood at Lockport; 112 Ski Bowl Road Operating

Company LLC, d/b/a Elderwood at North Creek; 170 West Avenue Operating Company LLC,

d/b/a Elderwood of Lakeside at Brockport; 1818 Como Park Boulevard Operating Company

LLC, d/b/a Elderwood at Lancaster; 185 Old Military Road Operating Company LLC, d/b/a

Elderwood of Uihlein at Lake Placid; 200 Bassett Road Operating Company LLC, d/b/a

Elderwood at Williamsville; 225 Bennett Road Operating Company LLC, d/b/a Elderwood at

Cheektowaga; 2600 Niagara Falls Boulevard Operating Company LLC, d/b/a Elderwood at

Wheatfield; 2850 Grand Island Boulevard Operating Company LLC, d/b/a Elderwood at Grand

Island; 37 North Chemung Street Operating Company LLC, d/b/a Elderwood at Waverly; 4459

Bailey Avenue Operating Company LLC, d/b/a Elderwood at Amherst; 4800 Bear Road

Operating Company LLC, d/b/a Elderwood at Liverpool; 981 Kings Town Road Operating

Company LLC, d/b/a Elderwood of Scallop Shell at Wakefield; 5775 Maelou Drive Operating

Company LLC, d/b/a Elderwood at Hamburg; 98 Starr Farm Road Operating Company LLC,

d/b/a Elderwood at Burlington; 111 Ensimger Road Operating Company LLC, d/b/a Elderwood

Assisted Living at Tonawanda; 245 Bassett Road Operating Company LLC, d/b/a Elderwood

Village at Bassett Park; 5271 Main Street Operating Company LLC, d/b/a Elderwood Village at

Williamsville; 580 Orchard Park Road Operating Company LLC, d/b/a Elderwood Assisted

Living at West Seneca; 76 Buffalo Street Operating Company LLC, d/b/a Elderwood Assisted

Living at Hamburg; 1404 Long Pond Road Operating Company LLC, d/b/a Elderwood Village

at Greece; 229 Bennett Road Operating Company LLC, d/b/a Elderwood Assisted Living at

Cheektowaga; 2600 Niagara Falls Boulevard AL Operating Company LLC, d/b/a Elderwood

Assisted Living at Wheatfield; 44 Ball Street Operating Company LLC, d/b/a Elderwood

Assisted Living at Waverly; 505 Clubhouse Road Operating Company LLC, d/b/a Elderwood

Village at Vestal; 626 Watervliet Shaker Road Operating Company LLC, d/b/a Elderwood

Village at Colonie; 7 Chardonnary Drive Operating Company LLC, d/b/a Elderwood Village at

Fairport; Post Acute Partners Management, LLC; Elderwood Administrative Services, LLC;

Elderwood Development, LLC; Elderwwood Staffing Solutions LLC; PP Pediatric Management

LP; Woodmark Pharmacy of CT, LLC; Woodmark Pharmacy of Massachusetts, LLC;

Woodmark Pharmacy of New York, LLC; 3300 Henry Avenue Operating Company LP; 120

Rider Avenue Operating Company, LP; 2900 Johnson Street Operating Company, LP; 120 Rider

Avenue PCH Operating Company, LP; and Warren Cole and Dr. Jeffrey Rubin, in their

individual capacities ("Defendants") on behalf of the United States of America, alleging as

follows:

## SUMMARY OF ACTION

1.     Plaintiff-Relator SFN Partners, LLC ("Plaintiff-Relator") brings this action

pursuant to the False Claims Act, 31 U.S.C. § 3729, *et seq*. ("FCA"), to recover treble damages

and penalties for tens of millions of dollars that Defendants obtained fraudulently in forgivable loans from the Paycheck Protection Program ("PPP") on or about April 27, 2020 – May 8, 2020. The PPP was established under the Coronavirus Aid, Relief and Economic Security ("CARES") Act to provide emergency financial assistance to small businesses suffering the economic effects of the COVID-19 pandemic.

2.　　　　Defendants Warren Cole and Dr. Jeffrey Rubin are venture capitalists who cynically defrauded the PPP to feed money into their healthcare investment conglomerate at the expense of American taxpayers.  Cole and Rubin are the sole co-owners of defendant private equity and healthcare investment firm, Post Acute Partners, LLC, and of the Elderwood family of adult nursing homes and assisted living facilities across the Northeast and Mid-Atlantic region, as well as the other companies in the Post Acute Partners corporate group, including numerous pediatric hospitals/nursing companies, institutional pharmacies, a Managed Medicaid health plan, healthcare management, staffing, and consulting companies, a home health care company, and a transportation company.  As a recent article in the trade journal, *Skilled Nursing News* put it, referring to the Elderwood nursing homes and assisted living facilities, "the Elderwood chain," owned by Cole and Rubin, "has been on an acquisition kick in the upstate New York region," "with purchases ranging from assisted living to skilled nursing – and backing from a corporate parent," namely Post Acute Partners.

3.　　　　In the article, which is posted on Post Acute Partners' website, defendant Cole fully acknowledged that Post Acute Partners is an investment firm and that it has significant liquidity and plenty of access to capital.  He stated in the article, with respect to a recent purchase by the company, that Post Acute Partners was "introduced to the opportunity really from a capital structure point of view" and that Post Acute Partners "[had] surplus capital."  He added,

in language that is indicative of a highly capitalized company with a private-equity perspective, that "When we look at an entity for acquisition, what we ask ourselves is:  Does this acquisition enhance our geographic footprint, so that it's not duplicative to another facility that we have, so that we're able to extend the Elderwood brand into geographies that don't yet benefit from it?"

4.     Post Acute Partners, Cole and Rubin, and the affiliated Elderwood chain of facilities, Woodmark Pharmacy companies, and Post Acute Partners/Elderwood/Pediatric Specialty Care management, consulting, administrative and staffing companies, applied for and, on April 27-28, 2020, were approved for PPP loans of at least $26.15 million to $60.55 million,[1] which were disbursed by no later than May 8, 2020.[2]  Though called loans, these disbursements, more than half of which were funneled through a bank at which defendant Cole is a member of the board of directors, Bank Leumi USA, are fully forgivable if the funds are used for payroll and certain other costs of the Post Acute Partners companies that received the loans.  Yet Post

---

[1] The SBA reported the loan amounts received by the Defendants in a "range," stated as a "minimum and maximum" for the loan rather than reporting the exact amount of the loan.  This is standard practice for the SBA under the PPP.  The SBA's ostensible reason for reporting the loan in a "range" is to protect the borrower's privacy.  *See* SBA's Paycheck Protection Program (PPP) Loan Data –Key Aspects – Updated August 20, 2020 (hereinafter "SBA August 20, 2020 PPP Loan Update").  The SBA has stated that "SBA is committed to ensuring that any release of PPP loan data does not harm small businesses or their employees.  In releasing PPP loan data to the public, SBA is maintaining a balance between providing transparency to American taxpayers and protecting small businesses' confidential business information, such as payroll, and personally identifiable information." *Id.*  In addition, the SBA states that "the loan range or actual listed amount reflects the current loan approval amount."  *Id.*

[2] Regulations promulgated by the SBA pursuant to the PPP provide that PPP loans had to be disbursed within 10 days of approval, with the ten-day period starting on April 28, 2020.  *See* 85 Fed. Reg. 26321, 26322-23 (May 4, 2020) (PPP Interim Final Rule ("IFR") #6) (stating that a PPP "lender must make a one-time full disbursement of the PPP loan within ten calendar days of loan approval" (which, if it falls on a weekend day or on a holiday, will be the next business day thereafter) and that the "ten calendar-day period . . . begins on April 28, 2020" for loans that were approved prior to May 4, 2020).  Thus, in the case of the loans at issue in this complaint, which were approved on April 27 and 28, 2020 (depending on the loan, and as set forth in detail below), the loans were disbursed starting April 27/28 and no later than May 8, 2020.

Acute Partners and the Elderwood chain of companies, Woodmark Pharmacy companies, and Post Acute Partners/Elderwood/Pediatric Specialty Care management, administrative, staffing and consulting companies are the farthest thing from small businesses.  Post Acute Partners, Cole and Rubin, and the Elderwood facilities and other companies that applied for and received the small business loans from the PPP fraudulently claimed that they met the eligibility requirements for the loans when they did not and fraudulently certified that the loans were necessary to support their ongoing operations, despite the extensive capital resources and liquidity of Post Acute Partners and Cole and Rubin.[3]  In addition, they exceeded the $20 million limit on PPP loans for a corporate group.

5.      Defendant Post Acute Partners, the defendant Elderwood and Woodmark Pharmacy companies, the defendant Post Acute Partners/Elderwood/Pediatric Specialty Care management, consulting, administrative and staffing companies that applied for and received the forgivable loans, and defendants Cole and Rubin, took limited funds from the PPP that should have gone to cash-strapped small companies.  By fraudulently taking these PPP funds, Defendants deprived companies that are genuinely struggling small businesses of the emergency relief that was temporarily available in this limited taxpayer-funded program.  Moreover, when

_____

[3] It is clear that the Defendants actually received the loans (in addition to having fraudulently applied for them and been approved for them), because the loans were reported as still active in the report issued by the SBA on August 20, 2020, that pertains to the status of PPP loans as of August 8, 2020.  *See* SBA August 20, 2020 PPP Loan Update.  The August 20, 2020 update was the last update issued by SBA providing data on recipients of PPP loans.  The SBA states in its August 20, 2020 update that "[t]he public PPP data includes only active loans.  Loans that were cancelled for any reason are not included in the public data release.  Including only active loans provides a more accurate picture of the businesses being supported by PPP, as cancelled loans did not receive any PPP funds."  *Id.*

the PPP ran dry, numerous small companies went out of business and were forced to lay off their employees, who then went on the unemployment rolls at the further expense of taxpayers.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action under the FCA pursuant to 28 U.S.C. §§ 1331 and 1345 and 31 U.S.C. § 3730(a), as well as pursuant to the Court's general equitable jurisdiction.

7.      Venue is appropriate in this District pursuant to 31 U.S.C. § 3732(a) because one or more of the Defendants can be found, resides, or transacts business in this District, and/or acts proscribed by 31 U.S.C. § 3729 occurred in this District.  Venue is also appropriate in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  Venue is also appropriate in this District pursuant to 28 U.S.C. § 1391(c) because Defendants are subject to the Court's personal jurisdiction with respect to this action.

## THE PARTIES

8.      Plaintiff-Relator SFN Partners, LLC is a limited liability company that is composed of individuals with information establishing that Defendants defrauded the PPP by applying for, obtaining the proceeds of, and retaining forgivable loan funds in the amount of at least $26.15 million to $60.55 million.  Defendants were not eligible for the funds under the CARES Act or the applicable SBA regulations or guidance and Defendants fraudulently certified that the loans were necessary to support their ongoing operations, despite the extensive capital resources and liquidity of Post Acute Partners and Cole and Rubin, among the other Defendants. Defendants also fraudulently obtained more funds than the $20 million limit for PPP loans to a corporate group.

9.     Defendant Post Acute Partners, LLC ("Post Acute Partners") is a privately-held Delaware corporation with offices at 641 Lexington Avenue, 31st Floor, New York, New York 10022.  It is the parent of the Post Acute Partners family of companies, consisting of the Elderwood chain of nursing homes and assisted living facilities, the Woodmark Pharmacy companies, the Pediatric Specialty Care companies, and the Post Acute Partners/Elderwood/Woodmark Pharmacy/Pediatric Specialty Care healthcare management, consulting, administrative, and staffing companies, home health, and transportation companies. In particular, it is the parent of the 29 Elderwood nursing homes and assisted living facilities, the three Woodmark Pharmacy companies, and the nine Post Acute Partners/Elderwood/Pediatric Specialty Care management, consulting, administrative and staffing companies that applied for, were approved for, and received between $26.15 million and $60.55 million in forgivable PPP loans.  Post Acute Partners is solely owned by defendants Warren Cole and Dr. Jeffrey Rubin.  It is in the business of acquiring nursing homes, assisted living facilities, and hospitals, as well as health care management, consulting, insurance and transportation companies.  It has extensive access to capital and liquidity and is essentially a private equity firm that invests in healthcare facilities and related companies.  Considered with its affiliates, which include numerous healthcare entities and other companies, it fails utterly to qualify as a small business eligible for emergency relief funds from the Paycheck Protection Program ("PPP") established under the CARES Act or the Small Business Administration regulations and guidelines promulgated pursuant to the CARES Act.

10.     Defendant Warren Cole is one of the two owners of Post Acute Partners, along with defendant Dr. Jeffrey Rubin, as well as of the 29 Elderwood adult nursing homes and assisted living facilities, the three Woodmark Pharmacy companies, and the nine Post Acute

Partners/Elderwood/Pediatric Specialty Care management, consulting, administrative and staffing companies that received the PPP loans at issue in this Complaint.  He is also one of the two owners, along with Dr. Rubin, of the other facilities and businesses in the Post Acute Partners family of companies.  Prior to founding Post Acute Partners with Dr. Rubin in 2010, Cole was associated with Care Venture, Inc., an investment firm that acquires operational and real estate interests in nursing homes and provides financing to health care facilities throughout the United States.  Since May 2015, Cole has been a member of the board of directors of Bank Leumi USA, a bank headquartered in Tel Aviv, Israel, that was the lender for more than half of the forgivable loans at issue in this case.

11.     Defendant Dr. Jeffrey Rubin, a dentist whose license is inactive, is one of the two owners of Post Acute Partners, along with defendant Warren Cole, as well as of the other defendant corporations that received the PPP loans at issue in this Complaint.  He is also one of the two owners, along with Cole, of the other facilities and businesses in the Post Acute Partners family of companies, even aside from the entities that applied for and received PPP loans.  Prior to founding Post Acute Partners with Cole in 2010, Dr. Rubin was Executive Vice President of Business Development for Care One Management, LLC/Healthbridge Management LLC, a multi-tiered health care investment network.  Prior to that, he was the President of Millenium Healthcare, Inc., which was the precursor to Care One and was also a healthcare investment and management company.

12.     Defendant 1 Bethesda Drive Operating Company LLC, d/b/a Elderwood at Hornell is an adult nursing home located at 1 Bethesda Drive in Hornell, New York.  Post Acute Partners acquired the nursing home in or about April 2016.  Elderwood at Hornell is wholly owned by Cole and Rubin, through a holding company.  Elderwood at Hornell applied for a PPP

loan, and on April 28, 2020, was approved for $1-2 million[4] in a forgivable PPP loan from CFG

Community Bank.  Based on the date of approval,[5] Elderwood at Hornell received the loan

proceeds by no later than May 8, 2020.  According to the SBA's PPP loan update, as of August

8, 2020, Elderwood at Hornell still had an active PPP loan.  Thus, Elderwood at Hornell did not

return the loan proceeds as of May 18, 2020, the last date on which a borrower could return PPP

loan proceeds and "be deemed by SBA to have made the required certification concerning the

necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's

regulations and guidance).[6]  As a result, Elderwood at Hornell, in addition to being ineligible for

a PPP loan due to its affiliation with the Post Acute Partners collection of companies, is liable for

its fraudulent certification that the loan was necessary to support its ongoing operations, despite

the extensive capital resources and liquidity of its corporate parent and owners, Post Acute

Partners and Cole and Rubin and the Post Acute Partners family of companies.[7]

13.     Defendant 1019 Wicker Street Operating Company LLC, d/b/a Elderwood at

Ticonderoga is an adult nursing home located in Ticonderoga, New York.  Post Acute Partners

acquired the nursing home in or about April 2018.  Elderwood at Ticonderoga is wholly owned

by Cole and Rubin through a holding company.  Elderwood at Ticonderoga applied for a PPP

loan and on April 28, 2020, was approved for $350,000-$1 million[8] in a forgivable PPP loan

---

[4] *See* note 1 above (loans are reported by the SBA in a range, purportedly to protect the privacy of the borrower).

[5] *See* note 2 above (PPP loans had to be disbursed within 10 days of approval, starting April 28, 2020).

[6] SBA Frequently Asked Questions ("SBA FAQs") Question #47 (modifying SBA FAQ ##31 and 43).

[7] Among other resources, prior to applying for the forgivable PPP loans, Elderwood at Hornell received many tens of thousands of dollars in disbursements from HHS from the CARES Act Provider Relief Fund, from which it has currently received at least $766,465.17, and likely substantially more.

[8] *See* note 1 above.

from CFG Community Bank.  Based on the date of approval,[9] Elderwood at Ticonderoga

received the loan proceeds no later than May 8, 2020.  According to the SBA's PPP loan update,

as of August 8, 2020, Elderwood at Ticonderoga still had an active PPP loan.  Thus, Elderwood

at Ticonderoga did not return the loan proceeds as of May 18, 2020, the last date on which a

borrower could return PPP loan proceeds and "be deemed by SBA to have made the required

certification concerning the necessity of the loan request in good faith" (the so-called "safe

harbor" set forth in the SBA's regulations and guidance).[10]  As a result, Elderwood at

Ticonderoga, in addition to being ineligible for a PPP loan due to its affiliation with the Post

Acute Partners collection of companies, is liable for its fraudulent certification that the loan was

necessary to support its ongoing operations, despite the extensive capital resources and liquidity

of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute

Partners family of companies.[11]

14.     Defendant 104 Old Niagara Road Operating Company LLC, d/b/a Elderwood at

Lockport is an adult nursing home located at 104 Old Niagara Road in Lockport, NY.  Post

Acute Partners acquired the nursing home in or about January 2018.  Elderwood at Lockport is

wholly owned by Cole and Rubin through a holding company.  Elderwood at Lockport applied

for a PPP loan and on April 27, 2020, was approved for $1-2 million[12] in a forgivable PPP loan

---

[9] See note 2 above (PPP loans had to be disbursed within 10 days of approval, starting April 28, 2020).

[10] See note 6 above.

[11] Among other resources, prior to applying for the forgivable PPP loans, Elderwood at Ticonderoga received at least many tens of thousands of dollars in disbursements from HHS from the CARES Act Provider Relief Fund, from which it has currently received at least $520,166.47, and likely substantially more.

[12] See note 1 above.

from Bank Leumi USA.  Based on the date of approval,[13] Elderwood at Lockport received the

loan proceeds by no later than May 8, 2020.  According to the SBA's PPP loan update, as of

August 8, 2020, Elderwood at Lockport still had an active PPP loan.  Thus, Elderwood at

Lockport did not return the loan proceeds as of May 18, 2020, the last date on which a borrower

could return PPP loan proceeds and "be deemed by SBA to have made the required certification

concerning the necessity of the loan request in good faith" (the so-called "safe harbor" set forth

in the SBA's regulations and guidance).[14]  As a result, Elderwood at Lockport, in addition to

being ineligible for a PPP loan due to its affiliation with the Post Acute Partners collection of

companies, is liable for its fraudulent certification that the loan was necessary to support its

ongoing operations, despite the extensive capital resources and liquidity of its corporate parent

and owners, Post Acute Partners and Cole and Rubin and the Post Acute Partners family of

companies.[15]

     15.     Defendant 112 Ski Bowl Road Operating Company LLC, d/b/a Elderwood at

North Creek is an adult nursing home located at 112 Ski Bowl Road in North Creek, New York.

Post Acute Partners acquired the nursing home in or about January 2018.  Elderwood at North

Creek is wholly owned by Cole and Rubin through a holding company.  Elderwood at North

Creek applied for a PPP loan and on April 27, 2020, was approved for $350,000-$1 million[16] in a

forgivable PPP loan from People's United Bank, National Association.  Based on the date of

---

[13] *See* note 2 above (PPP loans had to be disbursed within 10 days of approval, starting April 28, 2020).

[14] *See* note 6 above.

[15] Among other resources, prior to applying for the forgivable PPP loans, Elderwood at Lockport received many tens of thousands of dollars in disbursements from HHS from the CARES Act Provider Relief Fund, from which it has currently received at least $777,684.47, and likely substantially more.

[16] *See* note 1 above.

approval,[17] Elderwood at North Creek received the loan proceeds no later than May 8, 2020. According to the SBA's PPP loan update, as of August 8, 2020, Elderwood at North Creek still had an active PPP loan.  Thus, Elderwood at North Creek did not return the loan proceeds as of May 18, 2020, the last date on which a borrower could return PPP loan proceeds and "be deemed by SBA to have made the required certification concerning the necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[18]  As a result, Elderwood at North Creek, in addition to being ineligible for a PPP loan due to its affiliation with the Post Acute Partners collection of companies, is liable for its fraudulent certification that the loan was necessary to support its ongoing operations, despite the extensive capital resources and liquidity of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute Partners family of companies.[19]

16.     Defendant 170 West Avenue Operating Company LLC, d/b/a Elderwood of Lakeside at Brockport is an adult nursing home located at 170 West Avenue, Brockport, New York.  Post Acute Partners acquired the nursing home in or about January 2018.  Elderwood of Lakeside at Brockport is wholly owned by Cole and Rubin through a holding company. Elderwood of Lakewide at Brockport applied for a PPP loan and on April 27, 2020, was approved for $1-2 million[20] in a forgivable PPP loan from Bank Leumi USA.  Based on the date of approval,[21] Elderwood of Lakeside at Brockport received the loan proceeds no later than May

---

[17] *See* note 2 above (PPP loans had to be disbursed within 10 days of approval, starting April 28, 2020).

[18] *See* note 6 above.

[19] Moreover, prior to applying for the forgivable PPP loans, Elderwood at North Creek received at least many tens of thousands of dollars in disbursements from HHS from the CARES Act Provider Relief Fund, from which it has currently received at least $485,654.25, and likely substantially more.

[20] *See* note 1 above.

[21] *See* note 2 above.

8, 2020.  According to the SBA's PPP loan update, as of August 8, 2020, Elderwood of Lakeside at Brockport still had an active PPP loan.  Thus, Elderwood of Lakeside at Brockport did not return the loan proceeds as of May 18, 2020, the last date on which a borrower could return PPP loan proceeds and "be deemed by SBA to have made the required certification concerning the necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[22]  As a result, Elderwood of Lakeside at Brockport, in addition to being ineligible for a PPP loan due to its affiliation with the Post Acute Partners collection of companies, is liable for its fraudulent certification that the loan was necessary to support its ongoing operations, despite the extensive capital resources and liquidity of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute Partners family of companies.[23]

17.     Defendant 1818 Como Park Boulevard Operating Company LLC, d/b/a Elderwood at Lancaster is an adult nursing home located at 1818 Como Park Boulevard, Lancaster, New York.  Post Acute Partners acquired the nursing home in or about July 2013.  Elderwood at Lancaster is wholly owned by Cole and Rubin.  Elderwood at Lancaster applied for a PPP loan and on April 27, 2020, was approved for $1-2 million[24] in a forgivable PPP loan from Bank Leumi USA.  Based on the date of approval,[25] Elderwood at Lancaster received the loan proceeds no later than May 8, 2020.  According to the SBA's PPP loan update, as of August 8, 2020, Elderwood at Lancaster still had an active PPP loan.  Thus, Elderwood at Lancaster did not

---

[22] *See* note 6 above.

[23] Among other resources, prior to applying for the forgivable PPP loans, Elderwood of Lakeside at Brockport received at least many tens of thousands of dollars in disbursements from HHS from the CARES Act Provider Relief Fund, from which it has currently received at least $768,220.71 and likely substantially more.

[24] *See* note 1 above.

[25] *See* note 2 above.

return the loan proceeds as of May 18, 2020, the last date on which a borrower could return PPP

loan proceeds and "be deemed by SBA to have made the required certification concerning the

necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's

regulations and guidance).[26]  As a result, Elderwood at Lancaster, in addition to being ineligible

for a PPP loan due to its affiliation with the Post Acute Partners collection of companies, is liable

for its fraudulent certification that the loan was necessary to support its ongoing operations,

despite the extensive capital resources and liquidity of its corporate parent and owners, Post

Acute Partners and Cole and Rubin and the Post Acute Partners family of companies.[27]

18.     Defendant 185 Old Military Road Operating Company LLC, d/b/a Elderwood of

Uihlein at Lake Placid is an adult nursing home located at 185 Old Military Road, Lake Placid,

NY.  Post Acute Partners acquired the nursing home in or about October 2016.  Elderwood of

Uihlein at Lake Placid is wholly owned by Cole and Rubin.  Elderwood of Uihlein at Lake

Placid applied for a PPP loan and on April 28 2020, was approved for $1-2 million[28] in a

forgivable PPP loan from CFG Community Bank.  Based on the date of approval,[29] Elderwood

of Uihlein at Lake Placid received the loan proceeds by no later than May 8, 2020.  According to

the SBA's PPP loan update, as of August 8, 2020, Elderwood of Uihlein at Lake Placid still had

an active PPP loan.  Thus, Elderwood of Uihlein at Lake Placid did not return the loan proceeds

as of May 18, 2020, the last date on which a borrower could return PPP loan proceeds and "be

deemed by SBA to have made the required certification concerning the necessity of the loan

---

[26] *See* note 6 above.

[27] Among other resources, prior to applying for the forgivable PPP loans, Elderwood at Lancaster received at least many tens of thousands of dollars in disbursements from HHS from the CARES Act Provider Relief Fund, from which it has currently received at least $662,093.37 and likely substantially more.

[28] *See* note 1 above.

[29] *See* note 2 above.

request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[30]  As a result, Elderwood of Uihlein at Lake Placid, in addition to being ineligible for a PPP loan due to its affiliation with the Post Acute Partners collection of companies, is liable for its fraudulent certification that the loan was necessary to support its ongoing operations, despite the extensive capital resources and liquidity of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute Partners family of companies.[31]

19.    Defendant 200 Bassett Road Operating Company LLC, d/b/a Elderwood at Williamsville is an adult nursing home located at 200 Bassett Road in Williamsville, New York. Post Acute Partners acquired the nursing home in or about July 2013.  Elderwood at Williamsville is wholly owned by Cole and Rubin through a holding company.  Elderwood at Williamsville applied for a PPP loan and on April 27, 2020, was approved for $2-5 million[32] in a forgivable PPP loan from Bank Leumi USA.  Based on the date of approval,[33] Elderwood at Williamsville received the loan proceeds no later than May 8, 2020.  According to the SBA's PPP loan update, as of August 8, 2020, Elderwood at Williamsville still had an active PPP loan. Thus, Elderwood at Williamsville did not return the loan proceeds as of May 18, 2020, the last date on which a borrower could return PPP loan proceeds and "be deemed by SBA to have made the required certification concerning the necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[34]  As a result, Elderwood

---

[30] See note 6 above.

[31] Among other resources, prior to applying for the forgivable PPP loans, Elderwood of Uihlein at Lake Placid received at least many tens of thousands of dollars in disbursements from HHS from the CARES Act Provider Relief Fund, from which it has currently received at least $839,213.42, and likely substantially more.

[32] See note 1 above.

[33] See note 2 above.

[34] See note 6 above.

at Williamsville, in addition to being ineligible for a PPP loan due to its affiliation with the Post

Acute Partners collection of companies, is liable for its fraudulent certification that the loan was

necessary to support its ongoing operations, despite the extensive capital resources and liquidity

of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute

Partners family of companies.[35]

20.     Defendant 225 Bennett Road Operating Company LLC, d/b/a Elderwood at

Cheektowaga is an adult nursing home located at 225 Bennett Road, in Cheektowaga, New

York.  Post Acute Partners acquired the nursing home in or about July 2013.  Elderwood at

Cheektowaga is wholly owned by Cole and Rubin.  Elderwood at Cheektowaga applied for a

PPP loan and on April 27, 2020, was approved for $1-2 million[36] in a forgivable PPP loan from

Bank Leumi USA.  Based on the date of approval,[37] Elderwood at Cheektowaga received the

loan proceeds by no later than May 8, 2020.  According to the SBA's PPP loan update, as of

August 8, 2020, Elderwood at Cheektowaga still had an active PPP loan.  Thus, Elderwood at

Cheektowaga did not return the loan proceeds as of May 18, 2020, the last date on which a

borrower could return PPP loan proceeds and "be deemed by SBA to have made the required

certification concerning the necessity of the loan request in good faith" (the so-called "safe

harbor" set forth in the SBA's regulations and guidance).[38]  As a result, Elderwood at

Cheektowaga, in addition to being ineligible for a PPP loan due to its affiliation with the Post

Acute Partners collection of companies, is liable for its fraudulent certification that the loan was

---

[35] Among other resources, prior to applying for the forgivable PPP loans, Elderwood at
Williamsville received at least tens of thousands of dollars in disbursements from HHS from the
CARES Act Provider Relief Fund, from which it has currently received at least $1,321,577.49,
and likely substantially more.

[36] *See* note 1 above.

[37] *See* note 2 above.

[38] *See* note 6 above.

necessary to support its ongoing operations, despite the extensive capital resources and liquidity of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute Partners family of companies.[39]

21.     Defendant 2600 Niagara Falls Boulevard Operating Company LLC, d/b/a Elderwood at Wheatfield is an adult nursing home located at 2600 Niagara Falls Boulevard in Niagara Falls, New York.  Post Acute Partners acquired the nursing home in or about July 2013. Elderwood at Wheatfield is wholly owned by Cole and Rubin.  Elderwood at Wheatfield applied for a PPP loan and on April 28, 2020, was approved for $1-2 million[40] in a forgivable PPP loan from CFG Community Bank.  Based on the date of approval,[41] Elderwood at Wheatfield received the loan proceeds no later than May 8, 2020.  According to the SBA's PPP loan update, as of August 8, 2020, Elderwood at Wheatfield still had an active PPP loan.  Thus, Elderwood at Wheatfield did not return the loan proceeds as of May 18, 2020, the last date on which a borrower could return PPP loan proceeds and "be deemed by SBA to have made the required certification concerning the necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[42]  As a result, Elderwood at Wheatfield, in addition to being ineligible for a PPP loan due to its affiliation with the Post Acute Partners collection of companies, is liable for its fraudulent certification that the loan was necessary to support its ongoing operations, despite the extensive capital resources and liquidity

---

[39] Among other resources, prior to applying for the forgivable PPP loans, Elderwood at Cheektowaga received at least tens of thousands of dollars in disbursements from HHS from the CARES Act Provider Relief Fund, from which it has currently received at least $1,088,928.68, and likely substantially more.
[40] *See* note 1 above.
[41] *See* note 2 above.
[42] *See* note 6 above.

of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute

Partners family of companies.[43]

22.    Defendant 2850 Grand Island Boulevard Operating Company LLC, d/b/a

Elderwood at Grand Island is an adult nursing home located at 2850 Grand Island Boulevard in

Grand Island, New York.  Post Acute Partners acquired the nursing home in or about July 2013.

Elderwood at Grand Island is wholly owned by Cole and Rubin.  Elderwood at Grand Island

applied for a PPP loan and on April 28, 2020, was approved for $350,000-$1 million[44] in a

forgivable PPP loan from CFG Community Bank.  Based on the date of approval,[45] Elderwood at

Grand Island received the loan proceeds no later than May 8, 2020.  According to the SBA's PPP

loan update, as of August 8, 2020, Elderwood at Grand Island still had an active PPP loan.  Thus,

Elderwood at Grand Island did not return the loan proceeds as of May 18, 2020, the last date on

which a borrower could return PPP loan proceeds and "be deemed by SBA to have made the

required certification concerning the necessity of the loan request in good faith" (the so-called

"safe harbor" set forth in the SBA's regulations and guidance).[46]  As a result, Elderwood at

Grand Island, in addition to being ineligible for a PPP loan due to its affiliation with the Post

Acute Partners collection of companies, is liable for its fraudulent certification that the loan was

necessary to support its ongoing operations, despite the extensive capital resources and liquidity

---

[43] Among other resources, prior to applying for the forgivable PPP loans, Elderwood at
Wheatfield received at least tens of thousands of dollars in disbursements from HHS from the
CARES Act Provider Relief Fund, from which it has currently received at least $786,949.81.
[44] *See* note 1 above.
[45] *See* note 2 above.
[46] *See* note 6 above.

of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute Partners family of companies.[47]

23.     Defendant 37 North Chemung Street Operating Company LLC, d/b/a Elderwood at Waverly is an adult nursing home located at 37 North Chemung Street in Waverly, New York. Post Acute Partners acquired the nursing home in or about July 2013.  Elderwood at Waverly is wholly owned by Cole and Rubin.  Elderwood at Waverly applied for a PPP loan and on April 27, 2020, was approved for $2-5 million[48] in a forgivable PPP loan from Bank Leumi USA. Based on the date of approval,[49] Elderwood at Waverly received the loan proceeds no later than May 8, 2020.  According to the SBA's PPP loan update, as of August 8, 2020, Elderwood at Waverly still had an active PPP loan.  Thus, Elderwood at Waverly did not return the loan proceeds as of May 18, 2020, the last date on which a borrower could return PPP loan proceeds and "be deemed by SBA to have made the required certification concerning the necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[50]  As a result, Elderwood at Waverly, in addition to being ineligible for a PPP loan due to its affiliation with the Post Acute Partners collection of companies, is liable for its fraudulent certification that the loan was necessary to support its ongoing operations, despite the

---

[47] Among other resources, prior to applying for the forgivable PPP loans, Elderwood at Grand Island received at least tens of thousands of dollars (well over a hundred thousand) in disbursements from HHS from the CARES Act Provider Relief Fund, from which it has currently received at least $594,870.91.

[48] *See* note 1 above.

[49] *See* note 2 above.

[50] *See* note 6 above.

extensive capital resources and liquidity of its corporate parent and owners, Post Acute Partners

and Cole and Rubin and the Post Acute Partners family of companies.[51]

24.      Defendant 4459 Bailey Avenue Operating Company LLC, d/b/a Elderwood at

Amherst is an adult nursing home located at 4459 Bailey Avenue in Buffalo, NY.  Post Acute

Partners acquired the nursing home in or about July 2013.  Elderwood at Amherst is wholly

owned by Cole and Rubin.  Elderwood at Amherst applied for a PPP loan and on April 27, 2020,

was approved for $1-2 million[52] in a forgivable PPP loan from Bank Leumi USA.  Based on the

date of approval,[53] Elderwood at Amherst received the loan proceeds no later than May 8, 2020.

According to the SBA's PPP loan update, as of August 8, 2020, Elderwood at Amherst still had

an active PPP loan.  Thus, Elderwood at Amherst did not return the loan proceeds as of May 18,

2020, the last date on which a borrower could return PPP loan proceeds and "be deemed by SBA

to have made the required certification concerning the necessity of the loan request in good

faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[54]  As a

result, Elderwood at Amherst, in addition to being ineligible for a PPP loan due to its affiliation

with the Post Acute Partners collection of companies, is liable for its fraudulent certification that

the loan was necessary to support its ongoing operations, despite the extensive capital resources

and liquidity of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the

Post Acute Partners family of companies.[55]

---

[51] Among other resources, prior to applying for the forgivable PPP loans, Elderwood at Waverly received at least tens of thousands of dollars in disbursements from HHS from the CARES Act Provider Relief Fund, from which it has currently received at least $1,266,852.12.

[52] *See* note 1 above.

[53] *See* note 2 above.

[54] *See* note 6 above.

[55] Among other resources, prior to applying for the forgivable PPP loans, Elderwood at Amherst received at least tens of thousands of dollars in disbursements from HHS from the CARES Act Provider Relief Fund, from which it has currently received at least $643,831.23.

25.     Defendant 4800 Bear Road Operating Company LLC, d/b/a Elderwood at Liverpool is an adult nursing home located at 4800 Bear Road in Liverpool, New York.  Post Acute Partners acquired the nursing home in or about July 2013.  Elderwood at Liverpool is wholly owned by Cole and Rubin.  Elderwood at Liverpool applied for a PPP loan and on April 27, 2020, was approved for $2-5 million[56] in a forgivable PPP loan from Bank Leumi USA. Based on the date of approval,[57] Elderwood at Liverpool received the loan proceeds no later than May 8, 2020.  According to the SBA's PPP loan update, as of August 8, 2020, Elderwood at Liverpool still had an active PPP loan.  Thus, Elderwood at Liverpool did not return the loan proceeds as of May 18, 2020, the last date on which a borrower could return PPP loan proceeds and "be deemed by SBA to have made the required certification concerning the necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[58]  As a result, Elderwood at Liverpool, in addition to being ineligible for a PPP loan due to its affiliation with the Post Acute Partners collection of companies, is liable for its fraudulent certification that the loan was necessary to support its ongoing operations, despite the extensive capital resources and liquidity of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute Partners family of companies.[59]

26.     Defendant 981 Kings Town Road Operating Company LLC, d/b/a Elderwood at Scallop Shell at Wakefield is a skilled nursing facility located at 55 Scallop Shell Way in Wakefield, Rhode Island.  Post Acute Partners acquired the facility in or about December 2010.

---

[56] *See* note 1 above.
[57] *See* note 2 above.
[58] *See* note 6 above.
[59] Among other resources, prior to applying for the forgivable PPP loans, Elderwood at Liverpool received at least tens of thousands of dollars in disbursements from HHS from the CARES Act Provider Relief Fund, from which it has currently received at least $1,086,407.15.

Elderwood at Scallop Shell at Wakefield is wholly owned by Cole and Rubin through a holding company.  Elderwood at Scallop Shell at Wakefield applied for a PPP loan and on April 27, 2020, was approved for $1-2 million[60] in a forgivable PPP loan from Bank Leumi USA.  Based on the date of approval,[61] Elderwood at Scallop Shell at Wakefield received the loan proceeds no later than May 8, 2020.  According to the SBA's PPP loan update, as of August 8, 2020, Elderwood at Scallop Shell at Wakefield still had an active PPP loan.  Thus, Elderwood at Scallop Shell at Wakfield did not return the loan proceeds as of May 18, 2020, the last date on which a borrower could return PPP loan proceeds and "be deemed by SBA to have made the required certification concerning the necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[62]  As a result, Elderwood at Scallop Shell at Wakefield, in addition to being ineligible for a PPP loan due to its affiliation with the Post Acute Partners collection of companies, is liable for its fraudulent certification that the loan was necessary to support its ongoing operations, despite the extensive capital resources and liquidity of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute Partners family of companies.[63]

27.     Defendant 5775 Maelou Drive Operating Company LLC, d/b/a Elderwood at Hamburg is an adult nursing home located at 5775 Maelou Drive in Hamburg, New York.  Post Acute Partners acquired the nursing home in or about July 2013.  Elderwood at Hamburg is wholly owned by Cole and Rubin.  Elderwood at Hamburg applied for a PPP loan and on April

---

[60] *See* note 1 above.
[61] *See* note 2 above.
[62] *See* note 6 above.
[63] Among other resources, prior to applying for the forgivable PPP loans, Elderwood at Scallop Shell at Wakefield received at least tens of thousands of dollars in disbursements from HHS from the CARES Act Provider Relief Fund, from which it has currently received at least $450,475.60.

27, 2020, was approved for $1-2 million[64] in a forgivable PPP loan from Bank Leumi USA.

Based on the date of approval,[65] Elderwood at Hamburg received the loan proceeds no later than

May 8, 2020.  According to the SBA's PPP loan update, as of August 8, 2020, Elderwood at

Hamburg still had an active PPP loan.  Thus, Elderwood at Hamburg did not return the loan

proceeds as of May 18, 2020, the last date on which a borrower could return PPP loan proceeds

and "be deemed by SBA to have made the required certification concerning the necessity of the

loan request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and

guidance).[66]  As a result, Elderwood at Hamburg, in addition to being ineligible for a PPP loan

due to its affiliation with the Post Acute Partners collection of companies, is liable for its

fraudulent certification that the loan was necessary to support its ongoing operations, despite the

extensive capital resources and liquidity of its corporate parent and owners, Post Acute Partners

and Cole and Rubin and the Post Acute Partners family of companies.[67]

  28. Defendant 98 Starr Farm Road Operating Company LLC, d/b/a Elderwood at

Burlington is a skilled nursing facility located at 98 Starr Farm Road in Burlington, Vermont.

Post Acute Partners acquired the skilled nursing facility in or about December 2018.  Elderwood

at Burlington is wholly owned by Cole and Rubin.  Elderwood at Burlington applied for a PPP

loan and on April 28, 2020, was approved for $1-2 million[68] in a forgivable PPP loan from

People's United Bank, National Association.  Based on the date of approval,[69] Elderwood at

---

[64] *See* note 1 above.

[65] *See* note 2 above.

[66] *See* note 6 above.

[67] Among other resources, prior to applying for the forgivable PPP loans, Elderwood at Hamburg received at least tens of thousands of dollars in disbursements from HHS from the CARES Act Provider Relief Fund, from which it has currently received at least $1,056,090.55.

[68] *See* note 1 above.

[69] *See* note 2 above.

Burlington received the loan proceeds no later than May 8, 2020.  According to the SBA's PPP loan update, as of August 8, 2020, Elderwood at Burlington still had an active PPP loan.  Thus, Elderwood at Burlington did not return the loan proceeds as of May 18, 2020, the last date on which a borrower could return PPP loan proceeds and "be deemed by SBA to have made the required certification concerning the necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[70]  As a result, Elderwood at Burlington, in addition to being ineligible for a PPP loan due to its affiliation with the Post Acute Partners collection of companies, is liable for its fraudulent certification that the loan was necessary to support its ongoing operations, despite the extensive capital resources and liquidity of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute Partners family of companies.[71]

29.     Defendant 111 Ensminger Road Operating Company LLC, d/b/a Elderwood Assisted Living at Tonawanda is an assisted living facility located at 111 Ensminger Road in Tonawanda, New York.  Post Acute Partners acquired the assisted living facility in or about April 2016.  Elderwood Assisted Living at Tonawanda is wholly owned by Cole and Rubin. Elderwood Assisted Living at Tonawanda applied for a PPP loan and on April 28, 2020, was approved for $350,000-$1 million[72] in a forgivable PPP loan by CFG Community Bank.  Based on the date of approval,[73] Elderwood Assisted Living at Tonawanda received the loan proceeds no later than May 8, 2020.  According to the SBA's PPP loan update, as of August 8, 2020,

---

[70] *See* note 6 above.

[71] Among other resources, prior to applying for the forgivable PPP loans, Elderwood at Burlington received at least tens of thousands of dollars in disbursements from HHS from the CARES Act Provider Relief Fund, from which it has currently received at least $755,909.23.

[72] *See* note 1 above.

[73] *See* note 2 above.

Elderwood Assisted Living at Tonawanda still had an active PPP loan.  Thus, Elderwood

Assisted Living at Tonawanda did not return the loan proceeds as of May 18, 2020, the last date

on which a borrower could return PPP loan proceeds and "be deemed by SBA to have made the

required certification concerning the necessity of the loan request in good faith" (the so-called

"safe harbor" set forth in the SBA's regulations and guidance).[74]  As a result, Elderwood

Assisted Living at Tonawanda, in addition to being ineligible for a PPP loan due to its affiliation

with the Post Acute Partners collection of companies, is liable for its fraudulent certification that

the loan was necessary to support its ongoing operations, despite the extensive capital resources

and liquidity of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the

Post Acute Partners family of companies.

      30.    Defendant 245 Bassett Road Operating Company LLC, d/b/a Elderwood Village

at Bassett Park is an 83-unit assisted living facility located at 245 Bassett Road in Williamsville,

New York.  Post Acute Partners acquired the assisted living facility in or about April 2019.

Elderwood Village at Bassett Park is wholly owned by Cole and Rubin.  Elderwood Village at

Bassett Park applied for a PPP loan and on April 28, 2020, was approved for $350,000-$1

million[75] in a forgivable PPP loan from People's United Bank, National Association.  Based on

the date of approval,[76] Elderwood Village at Bassett Park received the loan proceeds no later

than May 8, 2020.  According to the SBA's PPP loan update, as of August 8, 2020, Elderwood

Village at Bassett Park still had an active PPP loan.  Thus, Elderwood Village at Bassett Park did

not return the loan proceeds as of May 18, 2020, the last date on which a borrower could return

PPP loan proceeds and "be deemed by SBA to have made the required certification concerning

---

[74] *See* note 6 above.
[75] *See* note 1 above.
[76] *See* note 2 above.

the necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[77]   As a result, Elderwood Village at Bassett Park, in addition to being ineligible for a PPP loan due to its affiliation with the Post Acute Partners collection of companies, is liable for its fraudulent certification that the loan was necessary to support its ongoing operations, despite the extensive capital resources and liquidity of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute Partners family of companies.

31.     Defendant 5271 Main Street Operating Company LLC, d/b/a Elderwood Village at Williamsville is an assisted living facility located at 5271 Main Street in Williamsville, New York.  Post Acute Partners acquired the assisted living facility in or about July 2013.  Elderwood Village at Williamsville is wholly owned by Cole and Rubin.  Elderwood Village at Williamsville applied for a PPP loan and on April 27, 2020, was approved for $350,000-$1 million[78] in a forgivable PPP loan from Bank Leumi USA.  Based on the date of approval,[79] Elderwood Village at Williamsville received the loan proceeds no later than May 8, 2020. According to the SBA's PPP loan update, as of August 8, 2020, Elderwood Village at Williamsville still had an active PPP loan.  Thus, Elderwood Village at Williamsville did not return the loan proceeds as of May 18, 2020, the last date on which a borrower could return PPP loan proceeds and "be deemed by SBA to have made the required certification concerning the necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[80]   As a result, Elderwood Village at Williamsville, in addition to

---

[77] *See* note 6 above.
[78] *See* note 1 above.
[79] *See* note 2 above.
[80] *See* note 6 above.

being ineligible for a PPP loan due to its affiliation with the Post Acute Partners collection of companies, is liable for its fraudulent certification that the loan was necessary to support its ongoing operations, despite the extensive capital resources and liquidity of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute Partners family of companies.

32.     Defendant 580 Orchard Park Road Operating Company LLC, d/b/a Elderwood Assisted Living at West Seneca is an assisted living facility located at 580 Orchard Park Road in West Seneca, New York.  Post Acute Partners acquired the assisted living facility in or about July 2013.  Elderwood Assisted Living at West Seneca is wholly owned by Cole and Rubin. Elderwood Assisted Living at West Seneca applied for a PPP loan and on April 27, 2020, was approved for $350,000-$1 million[81] in a forgivable PPP loan from Bank Leumi USA.  Based on the date of approval,[82] Elderwood at Hamburg received the loan proceeds no later than May 8, 2020.  According to the SBA's PPP loan update, as of August 8, 2020, Elderwood Assisted Living at West Seneca still had an active PPP loan.  Thus, Elderwood Assisted Living at West Seneca did not return the loan proceeds as of May 18, 2020, the last date on which a borrower could return PPP loan proceeds and "be deemed by SBA to have made the required certification concerning the necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[83]  As a result, Elderwood Assisted Living at West Seneca, in addition to being ineligible for a PPP loan due to its affiliation with the Post Acute Partners collection of companies, is liable for its fraudulent certification that the loan was necessary to support its ongoing operations, despite the extensive capital resources and liquidity

---

[81] *See* note 1 above.

[82] *See* note 2 above.

[83] *See* note 6 above.

of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute Partners family of companies.

33.     Defendant 76 Buffalo Street Operating Company LLC, d/b/a Elderwood Assisted Living at Hamburg is an assisted living facility located at 76 Buffalo Street in Hamburg, New York.  Post Acute Partners acquired the assisted living facility in or about July 2013.  Elderwood Assisted Living at Hamburg is wholly owned by Cole and Rubin.  Elderwood Assisted Living at Hamburg applied for a PPP loan and on April 27, 2020, was approved for $350,000-$1 million[84] in a forgivable PPP loan from Bank Leumi USA. Based on the date of approval,[85] Elderwood Assisted Living at Hamburg received the loan proceeds no later than May 8, 2020.  According to the SBA's PPP loan update, as of August 8, 2020, Elderwood Assisted Living at Hamburg still had an active PPP loan.  Thus, Elderwood Assisted Living at Hamburg did not return the loan proceeds as of May 18, 2020, the last date on which a borrower could return PPP loan proceeds and "be deemed by SBA to have made the required certification concerning the necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[86]  As a result, Elderwood Assisted Living at Hamburg, in addition to being ineligible for a PPP loan due to its affiliation with the Post Acute Partners collection of companies, is liable for its fraudulent certification that the loan was necessary to support its ongoing operations, despite the extensive capital resources and liquidity of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute Partners family of companies.

34.     Defendant 1404 Long Pond Road Operating Company LLC, d/b/a Elderwood Village at Greece is a 72-unit assisted living facility located at 1404 Long Pond Road in

---

[84] *See* note 1 above.
[85] *See* note 2 above.
[86] *See* note 6 above.

Rochester, New York.  Post Acute Partners acquired the assisted living facility in or about April

2019.  Elderwood Village at Greece is wholly owned by Cole and Rubin.  Elderwood Village at

Greece applied for a PPP loan and on April 28, 2020, was approved for $150,000-$350,000[87] in a

forgivable loan from People's United Bank, National Association.  Based on the date of

approval,[88] Elderwood Village at Greece received the loan proceeds no later than May 8, 2020.

According to the SBA's PPP loan update, as of August 8, 2020, Elderwood Village at Greece

still had an active PPP loan.  Thus, Elderwood Village at Greece did not return the loan proceeds

as of May 18, 2020, the last date on which a borrower could return PPP loan proceeds and "be

deemed by SBA to have made the required certification concerning the necessity of the loan

request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and

guidance).[89]  As a result, Elderwood Village at Greece, in addition to being ineligible for a PPP

loan due to its affiliation with the Post Acute Partners collection of companies, is liable for its

fraudulent certification that the loan was necessary to support its ongoing operations, despite the

extensive capital resources and liquidity of its corporate parent and owners, Post Acute Partners

and Cole and Rubin and the Post Acute Partners family of companies.

35.     Defendant 229 Bennett Road Operating Company LLC, d/b/a Elderwood Assisted

Living at Cheektowaga is an assisted living facility located at 229 Bennett Road in Buffalo, New

York.  Post Acute Partners acquired the assisted living facility in or about July 2013.  Elderwood

Assisted Living at Cheektowaga is wholly owned by Cole and Rubin.  Elderwood Assisted

Living at Cheektowaga applied for a PPP loan and on April 27, 2020, was approved for

---

[87] *See* note 1 above.
[88] *See* note 2 above.
[89] *See* note 6 above.

$150,000-$350,000[90] in a forgivable loan from Bank Leumi USA.  Based on the date of

approval,[91] Elderwood Assisted Living at Cheektowaga received the loan proceeds no later than

May 8, 2020.  According to the SBA's PPP loan update, as of August 8, 2020, Elderwood

Assisted Living at Cheektowaga still had an active PPP loan.  Thus, Elderwood Assisted Living

at Cheektowaga did not return the loan proceeds as of May 18, 2020, the last date on which a

borrower could return PPP loan proceeds and "be deemed by SBA to have made the required

certification concerning the necessity of the loan request in good faith" (the so-called "safe

harbor" set forth in the SBA's regulations and guidance).[92]  As a result, Elderwood Assisted

Living at Cheektowaga, in addition to being ineligible for a PPP loan due to its affiliation with

the Post Acute Partners collection of companies, is liable for its fraudulent certification that the

loan was necessary to support its ongoing operations, despite the extensive capital resources and

liquidity of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the

Post Acute Partners family of companies.

36.     Defendant 2600 Niagara Falls Boulevard AL Operating Company LLC, d/b/a

Elderwood Assisted Living at Wheatfield is an assisted living facility located at 2600 Niagara

Falls Boulevard in Wheatfield, New York.  Post Acute Partners acquired the assisted living

facility in or about July 2013.  Elderwood Assisted Living at Wheatfield is wholly owned by

Cole and Rubin.  Elderwood Assisted Living at Wheatfield applied for a PPP loan and on April

27, 2020, was approved for $150,000-$350,000[93] in a forgivable loan from Bank Leumi USA.

Based on the date of approval,[94] Elderwood Assisted Living at Wheatfield received the loan

---

[90] *See* note 1 above.

[91] *See* note 2 above.

[92] *See* note 6 above.

[93] *See* note 1 above.

[94] *See* note 2 above.

proceeds no later than May 8, 2020.  According to the SBA's PPP loan update, as of August 8,

2020, Elderwood Assisted Living at Wheatfield still had an active PPP loan.  Thus, Elderwood

Assisted Living at Wheatfield did not return the loan proceeds as of May 18, 2020, the last date

on which a borrower could return PPP loan proceeds and "be deemed by SBA to have made the

required certification concerning the necessity of the loan request in good faith" (the so-called

"safe harbor" set forth in the SBA's regulations and guidance).[95]  As a result, Elderwood

Assisted Living at Wheatfield, in addition to being ineligible for a PPP loan due to its affiliation

with the Post Acute Partners collection of companies, is liable for its fraudulent certification that

the loan was necessary to support its ongoing operations, despite the extensive capital resources

and liquidity of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the

Post Acute Partners family of companies.

37.     Defendant 44 Ball Street Operating Company LLC, d/b/a Elderwood Assisted

Living at Waverly is an assisted living facility located at 44 Ball Street in Waverly, New York.

Post Acute Partners acquired the assisted living facility in or about July 2013.  Elderwood

Assisted Living at Waverly is wholly owned by Cole and Rubin.  Elderwood Assisted Living at

Waverly applied for a PPP loan and on April 27, 2020, was approved for $150,000-$350,000[96] in

a forgivable loan from Bank Leumi USA.  Based on the date of approval,[97] Elderwood Assisted

Living at Waverly received the loan proceeds no later than May 8, 2020.  According to the

SBA's PPP loan update, as of August 8, 2020, Elderwood Assisted Living at Waverly still had

an active PPP loan.  Thus, Elderwood Assisted Living at Waverly did not return the loan

proceeds as of May 18, 2020, the last date on which a borrower could return PPP loan proceeds

---

[95] *See* note 6 above.
[96] *See* note 1 above.
[97] *See* note 2 above.

and "be deemed by SBA to have made the required certification concerning the necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[98]  As a result, Elderwood Assisted Living at Waverly, in addition to being ineligible for a PPP loan due to its affiliation with the Post Acute Partners collection of companies, is liable for its fraudulent certification that the loan was necessary to support its ongoing operations, despite the extensive capital resources and liquidity of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute Partners family of companies.

38.    Defendant 505 Clubhouse Road Operating Company LLC, d/b/a Elderwood Village at Vestal is an assisted living facility located at 505 Clubhouse Road in Vestal, New York.  Post Acute Partners acquired the assisted living facility in or about April 2019. Elderwood Village at Vestal is wholly owned by Cole and Rubin.  Elderwood Village at Vestal applied for a PPP loan and on April 27, 2020, was approved for $150,000-$350,000[99] in a forgivable loan from People's United Bank, National Association.  Based on the date of approval,[100] Elderwood Village at Vestal received the loan proceeds no later than May 8, 2020. According to the SBA's PPP loan update, as of August 8, 2020, Elderwood Village at Vestal still had an active PPP loan.  Thus, Elderwood Village at Vestal did not return the loan proceeds as of May 18, 2020, the last date on which a borrower could return PPP loan proceeds and "be deemed by SBA to have made the required certification concerning the necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[101]  As a result, Elderwood Village at Vestal, in addition to being ineligible for a PPP loan due to its

---

[98] *See* note 6 above.
[99] *See* note 1 above.
[100] *See* note 2 above.
[101] *See* note 6 above.

affiliation with the Post Acute Partners collection of companies, is liable for its fraudulent certification that the loan was necessary to support its ongoing operations, despite the extensive capital resources and liquidity of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute Partners family of companies.

39.     Defendant 626 Watervliet Shaker Road Operating Company LLC, d/b/a Elderwood Village at Colonie is a 94-unit assisted living facility located at 626 Watervliet Shaker Road in Latham, New York.  Post Acute Partners acquired the assisted living facility in or about April 2019.   Elderwood Village at Colonie is wholly owned by Cole and Rubin. Elderwood Village at Colonie applied for a PPP loan and on April 28, 2020, was approved for $150,000-$350,000[102] in a forgivable loan from People's United Bank, National Association. Based on the date of approval,[103] Elderwood Village at Colonie received the loan proceeds no later than May 8, 2020.  According to the SBA's PPP loan update, as of August 8, 2020, Elderwood Village at Colonie still had an active PPP loan.  Thus, Elderwood Village at Colonie did not return the loan proceeds as of May 18, 2020, the last date on which a borrower could return PPP loan proceeds and "be deemed by SBA to have made the required certification concerning the necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[104]  As a result, Elderwood Village at Colonie, in addition to being ineligible for a PPP loan due to its affiliation with the Post Acute Partners collection of companies, is liable for its fraudulent certification that the loan was necessary to support its ongoing operations, despite the extensive capital resources and liquidity of its

---

[102] *See* note 1 above.
[103] *See* note 2 above.
[104] *See* note 6 above.

corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute Partners family of companies.

40.     Defendant 7 Chardonnay Drive Operating Company LLC, d/b/a Elderwood Village at Fairport is an assisted living facility located at 7 Chardonnay Drive in Fairport, New York.  Post Acute Partners acquired the assisted living facility in or about April 2019. Elderwood Village at Fairport is wholly owned by Cole and Rubin.  Elderwood Village at Fairport applied for a PPP loan and on April 28, 2020, was approved for $150,000-$350,000[105] in a forgivable loan from People's United Bank, National Association.  Based on the date of approval,[106] Elderwood Village at Fairport received the loan proceeds no later than May 8, 2020. According to the SBA's PPP loan update, as of August 8, 2020, Elderwood Village at Fairport still had an active PPP loan.  Thus, Elderwood Village at Fairport did not return the loan proceeds as of May 18, 2020, the last date on which a borrower could return PPP loan proceeds and "be deemed by SBA to have made the required certification concerning the necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[107]  As a result, Elderwood Village at Fairport, in addition to being ineligible for a PPP loan due to its affiliation with the Post Acute Partners collection of companies, is liable for its fraudulent certification that the loan was necessary to support its ongoing operations, despite the extensive capital resources and liquidity of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute Partners family of companies.

41.     Defendant Post Acute Partners Management, LLC is a healthcare management company affiliated with Post Acute Partners LLC, Cole and Rubin, and the Elderwood chain of

---

[105] *See* note 1 above.
[106] *See* note 2 above.
[107] *See* note 6 above.

companies that is located at 641 Lexington Avenue, 31st Floor, New York, New York.  It is owned in whole or in part, and is controlled by Post Acute Partners, and Cole and Rubin, and/or their related companies.  Post Acute Partners Management, LLC applied for a PPP loan and on April 27, 2020, was approved for $150,000-$350,000[108] in a forgivable loan from Bank Leumi USA.  Based on the date of approval,[109] Post Acute Partners Management, LLC received the loan proceeds no later than May 8, 2020.  According to the SBA's PPP loan update, as of August 8, 2020, Post Acute Partners Management, LLC still had an active PPP loan.  Thus, Post Acute Partners Management, LLC did not return the loan proceeds as of May 18, 2020, the last date on which a borrower could return PPP loan proceeds and "be deemed by SBA to have made the required certification concerning the necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[110]  As a result, Post Acute Partners Mangement, LLC, in addition to being ineligible for a PPP loan due to its affiliation with the Post Acute Partners collection of companies, is liable for its fraudulent certification that the loan was necessary to support its ongoing operations, despite the extensive capital resources and liquidity of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute Partners family of companies.

42.     Defendant Elderwood Administrative Services, LLC is a healthcare administrative services companies in the Elderwood chain of companies, located at 500 Seneca Street, Suite 100, Buffalo, New York.  Elderwood Administrative Services, LLC applied for a PPP loan and on April 27, 2020, was approved for $2-5 million[111] in a forgivable loan from Bank

---

[108] *See* note 1 above.
[109] *See* note 2 above.
[110] *See* note 6 above.
[111] *See* note 1 above.

Leumi USA.  Based on the date of approval,[112] Elderwood Administrative Services, LLC

received the loan proceeds no later than May 8, 2020.  According to the SBA's PPP loan update,

as of August 8, 2020, Elderwood Administrative Services, LLC still had an active PPP loan.

Thus, Elderwood Administrative Services, LLC did not return the loan proceeds as of May 18,

2020, the last date on which a borrower could return PPP loan proceeds and "be deemed by SBA

to have made the required certification concerning the necessity of the loan request in good

faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[113]  As a

result, Elderwood Administrative Services, LLC, in addition to being ineligible for a PPP loan

due to its affiliation with the Post Acute Partners collection of companies, is liable for its

fraudulent certification that the loan was necessary to support its ongoing operations, despite the

extensive capital resources and liquidity of its corporate parent and owners, Post Acute Partners

and Cole and Rubin and the Post Acute Partners family of companies.

     43.     Defendant Elderwood Development, LLC is a healthcare development company

in the Elderwood chain of companies, located at 1142 Wehrle Drive, Buffalo, New York.

Elderwood Development, LLC applied for a PPP loan and on April 27, 2020, was approved for

$150,000-$350,000[114] in a forgivable loan from Bank Leumi USA.  Based on the date of

approval,[115] Elderwood Development, LLC received the loan proceeds no later than May 8,

2020.  According to the SBA's PPP loan update, as of August 8, 2020, Elderwood Development,

LLC still had an active PPP loan.  Thus, Elderwood Development, LLC did not return the loan

proceeds as of May 18, 2020, the last date on which a borrower could return PPP loan proceeds

---

[112] *See* note 2 above.
[113] *See* note 6 above.
[114] *See* note 1 above.
[115] *See* note 2 above.

and "be deemed by SBA to have made the required certification concerning the necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[116]   As a result, Elderwood Development, LLC, in addition to being ineligible for a PPP loan due to its affiliation with the Post Acute Partners collection of companies, is liable for its fraudulent certification that the loan was necessary to support its ongoing operations, despite the extensive capital resources and liquidity of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute Partners family of companies.

44.      Defendant Elderwood Staffing Solutions, LLC is a healthcare staffing company in the Elderwood chain of companies, located at 500 Seneca Street, Suite 500, Buffalo, New York. Elderwood Staffing Solutions, LLC applied for a PPP loan and on April 27, 2020, was approved for $150,000-$350,000[117] in a forgivable loan from Bank Leumi USA.  Based on the date of approval,[118] Elderwood Staffing Solutions, LLC received the loan proceeds no later than May 8, 2020.  According to the SBA's PPP loan update, as of August 8, 2020, Elderwood Staffing Solutions, LLC still had an active PPP loan.  Thus, Elderwood Staffing Solutions, LLC did not return the loan proceeds as of May 18, 2020, the last date on which a borrower could return PPP loan proceeds and "be deemed by SBA to have made the required certification concerning the necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[119]   As a result, Elderwood Staffing Solutions, LLC, in addition to being ineligible for a PPP loan due to its affiliation with the Post Acute Partners collection of companies, is liable for its fraudulent certification that the loan was necessary to support its

---

[116] *See* note 6 above.
[117] *See* note 1 above.
[118] *See* note 2 above.
[119] *See* note 6 above.

ongoing operations, despite the extensive capital resources and liquidity of its corporate parent

and owners, Post Acute Partners and Cole and Rubin and the Post Acute Partners family of

companies.

45.     Defendant Woodmark Pharmacy of CT, LLC is one of three pharmacies in the

Woodmark Pharmacy ("Woodmark Pharmacy") family of companies, which are owned by Post

Acute Partners and/or Cole and Rubin.  Woodmark Pharmacy of CT, LLC is located at 41

Northwest Drive, Plainville, Connecticut.  According to Post Acute Partners' website,

Woodmark Pharmacy "delivers medications and supplies to long term care, assisted living

communities and other residential and behavioral sites, as well as providing at-home pharmacy

solutions."  Woodmark Pharmacy's site states that it is "a premier institutional pharmacy with

corporate offices in New York, Massachusetts and Connecticut."  It furthers states that

"Woodmark extends its coverage through these states to the entire northeastern U.S., including

Rhode Island, New Hampshire, Maine and Connecticut."  It refers to Woodmark Pharmacy's

teams of staff, including in the clinical, customer service and pharmaceutical areas.  Woodmark

Pharmacy of CT, LLC applied for a PPP loan and on April 28, 2020, was approved for

$150,000-$350,000[120] in a forgivable loan from CFG Community Bank.  Based on the date of

approval,[121] Woodmark Pharmacy of CT, LLC received the loan proceeds no later than May 8,

2020.  According to the SBA's PPP loan update, as of August 8, 2020, Woodmark Pharmacy of

CT, LLC still had an active PPP loan.  Thus, Woodmark Pharmacy of CT, LLC did not return the

loan proceeds as of May 18, 2020, the last date on which a borrower could return PPP loan

proceeds and "be deemed by SBA to have made the required certification concerning the

---

[120] *See* note 1 above.
[121] *See* note 2 above.

necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[122]   As a result, Woodmark Pharmacy of CT, LLC, in addition to being ineligible for a PPP loan due to its affiliation with the Post Acute Partners collection of companies, is liable for its fraudulent certification that the loan was necessary to support its ongoing operations, despite the extensive capital resources and liquidity of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute Partners family of companies.

46.     Defendant Woodmark Pharmacy of Massachusetts, LLC is one of three pharmacies in the Woodmark Pharmacy family of companies, which are owned by Post Acute Partners and/or Cole and Rubin.  Woodmark Pharmacy of Massachusetts, LLC is located at 69 Hickory Drive, Waltham, Massachusetts.  Woodmark Pharmacy is described above in paragraph 45.  Woodmark Pharmacy of Massachusetts, LLC applied for a PPP loan and on April 28, 2020, was approved for $350,000-$1,000,000[123] in a forgivable loan from CFG Community Bank. Based on the date of approval,[124] Woodmark Pharmacy of Massachusetts, LLC received the loan proceeds no later than May 8, 2020.  According to the SBA's PPP loan update, as of August 8, 2020, Woodmark Pharmacy of Massachusetts, LLC still had an active PPP loan.  Thus, Woodmark Pharmacy of Massachusetts, LLC did not return the loan proceeds as of May 18, 2020, the last date on which a borrower could return PPP loan proceeds and "be deemed by SBA to have made the required certification concerning the necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[125]   As a

---

[122] *See* note 6 above.
[123] *See* note 1 above.
[124] *See* note 2 above.
[125] *See* note 6 above.

result, Woodmark Pharmacy of Massachusetts, LLC, in addition to being ineligible for a PPP

loan due to its affiliation with the Post Acute Partners collection of companies, is liable for its

fraudulent certification that the loan was necessary to support its ongoing operations, despite the

extensive capital resources and liquidity of its corporate parent and owners, Post Acute Partners

and Cole and Rubin and the Post Acute Partners family of companies.

47.     Defendant Woodmark Pharmacy of New York, LLC is one of three pharmacies in

the Woodmark Pharmacy group of companies, which are owned by Post Acute Partners and/or

Cole and Rubin.  Woodmark Pharmacy of New York, LLC is located at 1142 Wehrle Drive,

Buffalo, New York.  Woodmark Pharmacy is described above in paragraph 45.  Woodmark

Pharmacy of New York, LLC applied for a PPP loan and on April 28, 2020, was approved for

$350,000-$1,000,000[126] in a forgivable loan from CFG Community Bank.  Based on the date of

approval,[127] Woodmark Pharmacy of New York, LLC received the loan proceeds no later than

May 8, 2020.  According to the SBA's PPP loan update, as of August 8, 2020, Woodmark

Pharmacy of New York, LLC still had an active PPP loan.  Thus, Woodmark Pharmacy of New

York, LLC did not return the loan proceeds as of May 18, 2020, the last date on which a

borrower could return PPP loan proceeds and "be deemed by SBA to have made the required

certification concerning the necessity of the loan request in good faith" (the so-called "safe

harbor" set forth in the SBA's regulations and guidance).[128]  As a result, Woodmark Pharmacy of

New York, LLC, in addition to being ineligible for a PPP loan due to its affiliation with the Post

Acute Partners collection of companies, is liable for its fraudulent certification that the loan was

necessary to support its ongoing operations, despite the extensive capital resources and liquidity

---

[126] *See* note 1 above.
[127] *See* note 2 above.
[128] *See* note 6 above.

of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute Partners family of companies.

48.     Defendant PP Pediatric Management LP is a management company in the Pediatric Specialty Care group of companies, which are owned by Post Acute Partners and/or Cole and Rubin.  PP Pediatric Management LP is located at 500 Seneca Street, Suite 100, Buffalo, New York.  Pediatric Specialty Care is a group of companies that "serves technology dependent, medically complex children with varying and often multiple diagnoses and treatment levels."  It has numerous inpatient facilities throughout the Northeast and Mid-Atlantic states. The staff of Pediatric Specialty Care includes respiratory therapists, physical therapists, nurses and physician specialists, as well as administrative, management and other employees.  PP Pediatric Management LP applied for a PPP loan and on April 27, 2020, was approved for $150,000-$350,000[129] in a forgivable loan from Bank Leumi USA.  Based on the date of approval,[130] PP Pediatric Management LP received the loan proceeds no later than May 8, 2020. According to the SBA's PPP loan update, as of August 8, 2020, PP Pediatric Management LP still had an active PPP loan.  Thus, PP Pediatric Management LLP did not return the loan proceeds as of May 18, 2020, the last date on which a borrower could return PPP loan proceeds and "be deemed by SBA to have made the required certification concerning the necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[131]  As a result, PP Pediatric Management LP, in addition to being ineligible for a PPP loan due to its affiliation with the Post Acute Partners collection of companies, is liable for its fraudulent certification that the loan was necessary to support its ongoing operations, despite the

---

[129] *See* note 1 above.
[130] *See* note 2 above.
[131] *See* note 6 above.

extensive capital resources and liquidity of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute Partners family of companies.

49.     Defendant 3300 Henry Avenue Operating Company LP is a nursing care company in the Pediatric Specialty Care group of companies, which are owned by Post Acute Partners and/or Cole and Rubin.  3300 Henry Avenue Operating Company LP is located at 3301 Scotts Lane, Philadelphia, Pennsylvania.  Pediatric Specialty Care is discussed in paragraph 48 above.  3300 Henry Avenue Operating Company LP applied for a PPP loan and on April 28, 2020, was approved for $1-2 million[132] in a forgivable loan from CFG Community Bank.  Based on the date of approval,[133] 3300 Henry Avenue Operating Company LP received the loan proceeds no later than May 8, 2020.  According to the SBA's PPP loan update, as of August 8, 2020, 3300 Henry Avenue Operating Company LP still had an active PPP loan.  Thus, 3300 Henry Avenue Operating Company LP did not return the loan proceeds as of May 18, 2020, the last date on which a borrower could return PPP loan proceeds and "be deemed by SBA to have made the required certification concerning the necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[134]  As a result, 3300 Henry Avenue Operating Company LP, in addition to being ineligible for a PPP loan due to its affiliation with the Post Acute Partners collection of companies, is liable for its fraudulent certification that the loan was necessary to support its ongoing operations, despite the extensive capital resources and liquidity of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute Partners family of companies.

---

[132] *See* note 1 above.
[133] *See* note 2 above.
[134] *See* note 6 above.

50.     Defendant 120 Rider Avenue Operating Company LP is a management company in the Pediatric Specialty Care group of companies, which are owned by Post Acute Partners and/or Cole and Rubin.  120 Rider Avenue Operating Company LP is located at 120 Rider Avenue, Lancaster, Pennsylvania.  Pediatric Specialty Care is discussed in paragraph 48 above. 120 Rider Avenue Operating Company LLP applied for a PPP loan and on April 27, 2020, was approved for $350,000-$1million[135] in a forgivable loan from Bank Leumi USA.  Based on the date of approval,[136] 120 Rider Avenue Operating Company LP received the loan proceeds no later than May 8, 2020.  According to the SBA's PPP loan update, as of August 8, 2020, 120 Rider Avenue Operating Company LP still had an active PPP loan.  Thus, 120 Rider Avenue Operating Company LP did not return the loan proceeds as of May 18, 2020, the last date on which a borrower could return PPP loan proceeds and "be deemed by SBA to have made the required certification concerning the necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[137]  As a result, 120 Rider Avenue Operating Company LP, in addition to being ineligible for a PPP loan due to its affiliation with the Post Acute Partners collection of companies, is liable for its fraudulent certification that the loan was necessary to support its ongoing operations, despite the extensive capital resources and liquidity of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute Partners family of companies.

51.     Defendant 120 Rider Avenue PCH Operating Company LP is a management company in the Pediatric Specialty Care group of companies, which are owned by Post Acute Partners and/or Cole and Rubin.  120 Rider Avenue PCH Operating Company LP is located at

---

[135] *See* note 1 above.
[136] *See* note 2 above.
[137] *See* note 6 above.

120 Rider Avenue, Lancaster, Pennsylvania.  Pediatric Specialty Care is discussed in paragraph 48 above. 120 Rider Avenue PCH Operating Company LLP applied for a PPP loan and on April 27, 2020, was approved for $150,000-$350,000[138] in a forgivable loan from Bank Leumi USA. Based on the date of approval,[139] 120 Rider Avenue PCH Operating Company LP received the loan proceeds no later than May 8, 2020.  According to the SBA's PPP loan update, as of August 8, 2020, 120 Rider Avenue PCH Operating Company LP still had an active PPP loan.  Thus, 120 Rider Avenue PCH Operating Company LP did not return the loan proceeds as of May 18, 2020, the last date on which a borrower could return PPP loan proceeds and "be deemed by SBA to have made the required certification concerning the necessity of the loan request in good faith" (the so-called "safe harbor" set forth in the SBA's regulations and guidance).[140]  As a result, 120 Rider Avenue PCH Operating Company LP, in addition to being ineligible for a PPP loan due to its affiliation with the Post Acute Partners collection of companies, is liable for its fraudulent certification that the loan was necessary to support its ongoing operations, despite the extensive capital resources and liquidity of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the Post Acute Partners family of companies.

52.     Defendant 2900 Johnson Street Operating Company LP is a staffing company in the Pediatric Specialty Care group of companies, which are owned by Post Acute Partners and/or Cole and Rubin.  2900 Johnson Operating Company LP is located at 2900 Johnson Street, Aliquippa, Pennsylvania.  Pediatric Specialty Care is discussed in paragraph 48 above. 2900 Johnson Street Operating Company LLP applied for a PPP loan and on April 27, 2020, was

---

[138] *See* note 1 above.

[139] *See* note 2 above.

[140] *See* note 6 above.

approved for $350,000-$1 million[141] in a forgivable loan from Bank Leumi USA.  Based on the

date of approval,[142] 2900 Johnson Street Operating Company LP received the loan proceeds no

later than May 8, 2020.  According to the SBA's PPP loan update, as of August 8, 2020, 2900

Johnson Street Operating Company LP still had an active PPP loan.  Thus, 2900 Johnson Street

Operating Company LP did not return the loan proceeds as of May 18, 2020, the last date on

which a borrower could return PPP loan proceeds and "be deemed by SBA to have made the

required certification concerning the necessity of the loan request in good faith" (the so-called

"safe harbor" set forth in the SBA's regulations and guidance).[143]  As a result, 2900 Johnson

Street Operating Company LP, in addition to being ineligible for a PPP loan due to its affiliation

with the Post Acute Partners collection of companies, is liable for its fraudulent certification that

the loan was necessary to support its ongoing operations, despite the extensive capital resources

and liquidity of its corporate parent and owners, Post Acute Partners and Cole and Rubin and the

Post Acute Partners family of companies.

## STATUTORY AND REGULATORY BACKGROUND

**A.**    **Overview of the Paycheck Protection Program ("PPP") for Small Businesses**

53.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal

law enacted in March 2020, that provides emergency financial assistance to small businesses

suffering the economic effects caused by the COVID-19 pandemic.  The CARES Act authorized

up to $349 billion in forgivable loans to small businesses[144], through the Paycheck Protection

Program ("the PPP"), ostensibly to enable small businesses to retain their employees during the

---

[141] *See* note 1 above.

[142] *See* note 2 above.

[143] *See* note 6 above.

[144] The PPP also provides loans to certain organizations, such as non-profits, which is not
relevant to this Complaint.

COVID-19 pandemic.  On or about April 24, 2020, an additional $310 billion in funding was authorized for the program.

54.     The PPP allows eligible small businesses to receive unsecured loans guaranteed by the Small Business Administration ("SBA"), the federal agency that administers assistance to small businesses.  Under the PPP, not only is the loan guaranteed, but the interest and principal can be forgiven under certain conditions, as further discussed below, if the small business receiving the loan spends the proceeds on payroll costs, mortgage interest, rent and utilities.  The PPP is overseen by the SBA, which has authority over all PPP loans, but individual PPP loans are issued by commercial lenders approved by the SBA who receive and process PPP applications and supporting documentation, and make the loans using the lenders' funds.[145] With respect to the PPP loans that are forgiven, the federal government – and thus American taxpayers – reimburse the lenders for the loan funds disbursed to the business.

55.     As relevant to this Complaint, under the CARES Act and the SBA's regulations and guidance (including the SBA's Frequently Asked Questions ("FAQs") and SBA's Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program ("SBA

---

[145] Lenders submit PPP loan data to SBA through an interface provided by SBA.  *See* SBA FAQ #13:

> Question:  Are lenders permitted to use their own online portals and an electronic form that they create to collect the same information and certifications as in the Borrower Application Form, in order to complete implementation of their online portals?
>
> Answer: Yes.  Lenders may use their own online systems and a form they establish that asks for the same information (using the same language) as the Borrower Application Form.  Lenders are still required to send the data to SBA using SBA's interface.

Affiliation Rules")) promulgated pursuant to the Act, a business must meet one of the following

tests to be eligible for a PPP loan:

1)  The business has 500 or fewer employees, including both its own and its affiliates' employees.  *See* Small Business Act § 7(a) (36)(D)(i)(I), 15 U.S.C. § 636(a)(36)(D)(i)(I); SBA FAQ #44.

2)  Without including its affiliates, the business meets the SBA's definition[146] of a small business in its primary industry.  In addition, together with its affiliates, the business meets the definition of a small business in its primary industry or the primary industry of itself and its affiliates on a combined basis, whichever definition is more restrictive.  *See* 13 C.F.R. § 121.301(a); SBA FAQ # 2.

3)  Together with its affiliates, the business has $15 million or less of tangible net worth as of March 27, 2020, and $5 million or less of average net income after federal income taxes (excluding carry-over losses) for the last two fiscal years before the date of application for a PPP loan.[147]  *See* Small Business Act § 3(a)(5)(b); SBA FAQ # 2.[148]

---

[146] The tests for whether a business qualifies as a small business under the CARES Act can be based on the business's employee count or on the business's revenue.  The test under 13 C.F.R. § 121.301(a) can be met based either on employee count or based on revenue.

[147] This alternative standard comes from the 2010 Small Business Jobs Act (Jobs Act), for which the SBA has never finalized implementing regulations.  However, Congress included language in the Jobs Act to provide for a temporary standard pending adoption of regulations.

[148] The other eligibility tests for small businesses set forth in the SBA regulations are not applicable to this Complaint.  They include:

- The business meets the SBA's definition of a small business under the employee-based size test published by the SBA for the business's industry when both its and its affiliates' employees are considered together.  *See* Small Business Act § 7(a)(36)(D)(i)(II); SBA FAQ Question 3; North American Industry Classification system ("NAICS").  There is no employee-based size standard for the health care industry, so this prong of the eligibility test is not applicable here.
- The business's primary industry is in NAICS category 72, which is the accommodation and food services category, and it has, together with its affiliates, no more than 500 employees per physical location.  This prong of the eligibility test does not apply because the Defendants here are not in the accommodation and food services industry.
- The business is "operating as a franchise that is assigned a franchise identifier code by the Administration."  IFR #2 § 1.  This prong of the eligibility test is not applicable because Defendants are not franchises.

For purposes of eligibility, "employees" include all full-time, part-time, temporary, leased, and furloughed employees.  *See* 13 C.F.R. § 121.106(a).[149]  As discussed further below, two businesses are defined as "affiliates" of each other when one of the businesses, or its owner, either owns or controls "or has the power to control" the other, "or a third party or parties controls or has the power to control both."[150]  13 C.F.R. § 121.301(f); *see* SBA's Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program describing the tests for affiliation.

56.     PPP loan proceeds are disbursed in a single draw that must occur within 10 calendar days starting from April 28, 2020, as relevant to this Complaint.  *See supra* note 2.  An applicant for a PPP loan must certify on the Borrower Application Form that the borrower qualifies as a small business concern eligible to receive a PPP loan.  Specifically, the applicant must certify that: "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)." *See* Borrower Application Form.

57.     On April 30, 2020, the SBA established a $20 million limit for loans to businesses that are majority owned, directly or indirectly, by a common parent.  *See* IFR #7 Section 1, 85 Fed. Reg. 26324, 26325 (May 4, 2020).  The SBA regulations provide as follows:

Question 1:  Can a single corporate group receive unlimited PPP loans?

---

[149] PPP applicants may use their average number of employees "either from the previous 12 months or from calendar year 2019."  *See* SBA FAQ # 14; 13 C.F.R. §121.106(b).

[150] The regulations state that "[i]t does not matter whether control is exercised, so long as the power to control exists."  13 C.F.R. §121.301(f); SBA's Affiliation Guidance at page 1.

Answer:  No.  To preserve the limited resources available to the PPP program, and in light of the previous lapse of PPP appropriations and the high demand for PPP loans, businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate.[151]  For purposes of this limit, businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent.  This limitation shall be immediately effective with respect to any loan that has not yet been fully disbursed as of April 30, 2020.[152]

Moreover, even with respect to loans that were fully disbursed by April 30, 2020, the recipient of the loans was required to ensure compliance with the $20 million cap on loans to a corporate group.  The CARES Act regulations provide that "[i]t is the responsibility of an applicant for a PPP loan to notify the lender if the applicant has applied for or received PPP loans in excess of the amount permitted by this interim final rule and withdraw or request cancellation of any pending PPP loan application or approved PPP loan not in compliance with the limitation set forth in this rule."  85 Fed. Reg. at 26325.  The regulations further provide that "[f]ailure by the applicant to do so will be regarded as a use of PPP funds for unauthorized purposes, and the loan will not be eligible for forgiveness."  *Id.*

---

[151] Footnote 1 in block quote from 85 Fed. Reg. 26324, 26325 (May 4, 2020) (IFR #7):

The Administrator has authority to issue "such rules and regulations as [the Administrator] deems necessary to carry out the authority vested in him by or pursuant to" 15 U.S.C. Chapter 14A, including authorities established under section 1102 of the CARES Act.  Section 1102 provides that the Administrator "may" guarantee loans under the terms and conditions et forth in section 7(a) of the Small Business Act, and those conditions specify a "maximum" – but not a minimum – loan amount.  *See* 15 U.S.C. 636(A)(36)(B), (E); *see also* CARES Act section 1106(k) (authorizing SBA to issue regulations to govern loan forgiveness).  To preserve finite appropriations for PPP loans and ensure broad access for eligible borrowers, the Administrator, in conjunction with the Secretary, has determined that an aggregate limitation on loans to a single corporate group is necessary and appropriate.

[152] Footnote 2 in block quote from 85 Fed. Reg. 26324 at 26325:

For loans that have been partially disbursed, this limitation applies to any additional disbursement that would cause the total PPP loans to a single corporate group to exceed $20 million.

58.     The SBA does not review all PPP loan applications to determine whether the

borrower is properly certifying its eligibility as a small business.  *See* SBA FAQ #39 and #31.  In

its answers to Frequently Asked Questions, the SBA indicated that, in general, it would only

review loans in excess of $2 million.  SBA FAQ #39 states as follows:

FAQ #39.  Question:  Will SBA review individual PPP loan files?

Answer:  Yes.  In FAQ #31, SBA reminded all borrowers of an important certification
required to obtain a PPP loan.  To further ensure PPP loans are limited to eligible
borrowers in need, the SBA has decided, in consultation with the Department of the
Treasury, that it will review all loans in excess of $2 million, in addition to other loans as
appropriate, following the lender's submission of the borrower's loan forgiveness
application.  Additional guidance implementing this procedure will be forthcoming.
The outcome of SBA's review of loan files will not affect SBA's guarantee of any loan
for which the lender complied with the lender obligations set forth in paragraphs
III.3b(a)-(iii) of the Paycheck Protection Program Rule (April 2, 2020) and further
explained in FAQ #1.

The additional guidance from SBA indicated that it was reviewing loans in excess of $2 million

to use the SBA's resources most efficiently.  *See* SBA, Paycheck Protection Program (PPP)

Loan Data – Key Aspects – Updated August 20, 2020 ("SBA August 20th Update") ("all loans

over $2 million will automatically be reviewed").

59.     As noted above, PPP loans do not have to be repaid if the loan is used to fund

payroll costs, mortgage interest, rent and utilities.  CARES Act § 1106(b).  Borrowers have

substantial flexibility in terms of obtaining loan forgiveness under the Act.  As the SBA has

stated in its FAQs:

FAQ #20.  Question: The amount of forgiveness of a PPP loan depends on the borrower's
payroll costs over an eight-week or 24-week period; when does that eight-week or 24-
week period begin?

Answer: The eight-week or 24-week period starts on the date your lender makes a
disbursement of the PPP loan to the borrower.  The lender must disburse the loan no later
than 10 calendar days from the date of loan approval.

> The Paycheck Protection Program Flexibility Act of 2020, which became law on June 5, 2020, extended the covered period for loan forgiveness from eight weeks after the date of loan disbursement to 24 weeks after the date of loan disbursement, providing substantially greater flexibility for borrowers to qualify for loan forgiveness.  The 24-week period applies to all borrowers, but borrowers that received an SBA loan number before June 5, 2020, have the option to use an eight-week period.

Thus, in many cases, as long as the loans are used for the purposes set forth in the Act, PPP loans do not have to be repaid.

60.     The SBA also created a great deal of flexibility for a business to return a PPP loan.[153]  SBA created a so-called "safe harbor," allowing businesses to return PPP loan funds without any consequences with respect to the certification of necessity.  *See* SBA FAQ #46. [154]

---

[153] For example, in a highly publicized transaction, Shake Shack purportedly returned $10 million in PPP loans.  *See* https://www.cnn.com/2020/04/20/business/shake-shack-ppp-loan-sba/index.html.

[154] SBA FAQ #46 states as follows:

Question:  How will SBA review borrowers' required good-faith certification concerning the necessity of their loan request?

Answer:  When submitting a PPP application, all borrowers must certify in good faith that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."  SBA, in consultation with the Department of the Treasury, has determined that the following safe harbor will apply to SBA's review of PPP loans with respect to this issue:  Any borrower that, together with its affiliates, received PPP loans with an original principal amount of less than $2 million will be deemed to have made the required certification concerning the necessity of the loan request in good faith.

SBA has determined that this safe harbor is appropriate because borrowers with loans below this threshold are generally less likely to have had access to adequate sources of liquidity in the current economic environment than borrowers that obtained larger loans. This safe harbor will also promote economic certainty as PPP borrowers with more limited resources endeavor to retain and rehire employees.  In addition, given the large volume of PPP loans, this approach will enable SBA to conserve its finite audit resources and focus its review on larger loans, where the compliance effort may yield higher returns.

Importantly, borrowers with loans greater than $2 million that do not satisfy this safe harbor may still have an adequate basis for making the required good-faith certification,

The SBA regulations promulgated under the CARES Act provide that borrowers who "repaid their loans in full by May 18, 2020, will be deemed to have made the required certification of need in good faith." *See* IFR #4 § 5 as modified by IFR #9, 85 Fed. Reg. 29845, 29846 (May 19, 2020); and IFR #13 § 1, 85 Fed. Reg. 31357, 31358 (May 26, 2020); SBA FAQ #31, as modified by SBA FAQ #43 and SBA FAQ #47.

**B.    Definition of Affiliated Companies Under the PPP**

61.    The SBA's regulations, 13 C.F.R. § 121.301(f), set forth the following rules for determining whether businesses are affiliated, as relevant to this Complaint:

1) Affiliation based on ownership.  For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity.  If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern . . . . . . .

(2) Affiliation based on management.  Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns.  Affiliation also arises where a single individual, concern, or entity that controls

---

based on their individual circumstances in light of the language of the certification and SBA guidance.  SBA has previously stated that all PPP loans in excess of $2 million, and other PPP loans as appropriate, will be subject to review by SBA for compliance with program requirements set forth in the PPP Interim Final Rules and in the Borrower Application Form.  If SBA determines in the course of its review that a borrower lacked an adequate basis for the required certification concerning the necessity of the loan request, SBA will seek repayment of the outstanding PPP loan balance and will inform the lender that the borrower is not eligible for loan forgiveness.  If the borrower repays the loan after receiving notification from SBA, SBA will not pursue administrative enforcement or referrals to other agencies based on its determination with respect to the certification concerning necessity of the loan request.  SBA's determination concerning the certification regarding the necessity of the loan request will not affect SBA's loan guarantee.

Footnote 20 to the Answer further states that: "For purposes of this safe harbor, a borrower must include its affiliates to the extent required under the interim final rule on affiliates, 85 FR 20817 (April 15, 2020)."

the Board of Directors or management of one concern also controls the Board of Directors or management of one or more other concerns.  Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement.

(3)  Affiliation based on identity of interest.  Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interests.
. . .

Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection

Program; 13 C.F.R. § 121.301(f).

62.    In guidance promulgated under the CARES Act, the SBA has made clear that

applicants for PPP loans bear the responsibility for determining whether they meet the definition

of a small business under the SBA regulations when considered with their affiliates.  The SBA's

guidance states as follows:

SBA FAQ #4.  Question: Are lenders required to make an independent determination regarding applicability of affiliation rules under 13 CFR 121.301(f) to borrowers?

Answer: No.  It is the responsibility of the borrower to determine which entities (if any) are its affiliates and determine the employee headcount of the borrower and its affiliates. Lenders are permitted to rely on borrowers' certifications.

SBA FAQs.

## C.    Applicants for PPP Loans Must Certify in Good Faith that the Loan is Necessary to Support the Applicant's Ongoing Operation

63.    In addition to certifying that it is eligible for a loan under the PPP as a small

business when considered with its affiliates, an applicant must also certify that "[c]urrent

economic uncertainty makes this loan request necessary to support the ongoing operations of the

Applicant."  SBA FAQ #31; Borrower Application Form at page 2.  As the SBA has stated in its

FAQs regarding the PPP, "[b]orrowers must make this certification in good faith, taking into

account their current business activity and their ability to access other sources of liquidity

sufficient to support their ongoing operations in a manner that is not significantly detrimental to the business."  *Id*.[155]  The SBA has indicated that this requirement applies to private companies with adequate sources of liquidity as well as public companies.  *See* SBA FAQ Answer to Question # 37 (responding to the question "Do businesses owned by private companies with adequate sources of liquidity to support the business's ongoing operations qualify for a PPP loan?").

64.     In addition, the SBA has made clear that large companies with substantial sources of liquidity are not eligible for a PPP loan because they cannot certify a need for an emergency loan to continue in business.  The SBA's FAQs provide as follows:

> FAQ #31.  Question: Do businesses owned by large companies with adequate sources of liquidity to support the business's ongoing operations qualify for a PPP loan?
>
> Answer:  In addition to reviewing applicable affiliation rules to determine eligibility, all borrowers must assess their economic need for a PPP loan under the standard established by the CARES Act and the PPP regulations at the time of the loan application.  Although the CARES Act suspends the ordinary requirement that borrowers must be unable to obtain credit elsewhere (as defined in section 3(h) of the Small Business Act), borrowers still must certify in good faith that their PPP loan request is necessary.  Specifically, before submitting a PPP application, all borrowers should review carefully the required certification that "[c]urrent economic uncertainly makes this loan request necessary to support the ongoing operations of the Applicant."  Borrowers must make this certification in good faith, taking into account their current business activity and their ability to access other sources of liquidity sufficient to support their ongoing operations in a manner that is not significantly detrimental to the business . . .

---

[155] The SBA has indicated that public companies with significant financial resources likely are not eligible for PPP loans.  In answer to FAQ #31, for example, the SBA stated that "it is unlikely that a public company with substantial market value and access to capital markets will be able to make the required certification in good faith, and such a company should be prepared to demonstrate to SBA, upon request, the basis for its certification.  This applies to private companies as well.  *See* SBA FAQ # 37 (extending SBA FAQ # 31 to all businesses owned by private companies that have adequate sources of liquidity).

**D.**     **Prohibition on Investment Companies Receiving Loans Through the PPP**

65.     Private equity companies and other investment companies are prohibited from

obtaining PPP loans under the PPP regulations.  The SBA has taken the position that "[h]edge

funds and private equity firms are primarily engaged in investment or speculation, and such

businesses are therefore ineligible to receive a PPP loan."  IFR #4 § 2(a), 85 Fed. Reg. 23450,

23451 (April 28, 2020).  The regulations read as follows:

2. Clarification Regarding Eligible Businesses

*a. Is a hedge fund or private equity firm eligible for a PPP loan?*

No.  Hedge funds and private equity firms are primarily engaged in investment or
speculation, and such businesses are therefore ineligible to receive a PPP loan.  The
Administrator, in consultation with the Secretary, does not believe that congress intended
for these types of businesses, which are generally ineligible for section 7(a) loans under
existing SBA regulations, to obtain PPP financing.

*Id.*  In addition, the regulations explicitly provide that the SBA affiliation rules apply to portfolio

companies of a private equity fund and cast significant doubt on whether such a portfolio

company could satisfy the certification that "[c]urrent economic uncertainty makes this loan

request necessary to support the ongoing operations of the Applicant.  *Id.*  The regulations state

as follows:

*b. Do the SBA affiliation rules prohibit a portfolio company of a private equity fund from
being eligible for a PPP loan?*

Borrowers must apply the affiliation rules that appear in 13 CFR 121.301(f), as set forth
in the Second PPP Interim Final Rule (85 FR 20817).  The affiliation rules apply to
private equity-owned businesses in the same manner as any other business subject to
outside ownership or control.  However, in addition to applying any applicable affiliation
rules, all borrowers should carefully review the required certification on the Paycheck
Protection Program Borrower Application Form (SBA Form 2483) stating that "[c]urrent
economic uncertainty makes this loan request necessary to support the ongoing
operations of the Applicant."

*Id.*  Moreover, as noted above, on April 30, 2020, SBA instituted a $20 million cap on PPP loans

to businesses that are majority owned, directly or indirectly, by a common parent.  IFR #7 § 1, 85

Fed. Reg. 26324, 26325 (May 4, 2020).  This applies to portfolio companies that are majority

owned by private equity funds.  *Id.*  It also applies even if, for whatever reason, companies in a

corporate group are found not to be affiliates under the definitions applicable to the PPP.  *Id.*

The SBA's regulations state that: "Businesses are subject to this limitation even if the

businesses . . . are otherwise not considered to be affiliates under the SBA's affiliation rules."  *Id.*

## FACTUAL ALLEGATIONS

**A.**     **Post Acute Partners, a Health Care Investment Company, and the Elderwood Chain of Nursing Homes and Assisted Living Facilities, the Woodmark Pharmacy Companies, and the Post Acute Partners/Elderwood/Pediatric Specialty Care Management, Consulting, Administrative and Staffing Companies**

66.     Post Acute Partners, LLC ("Post Acute Partners"), a privately-held company

based in New York City, was founded in 2010 by Warren Cole ("Cole") and Dr. Jeffrey Rubin

("Rubin"), a former dentist with an inactive license.  As stated in a 2018 New York State

Department of Health ("DOH") memorandum of the DOH's Public Health and Health Planning

Council ("DOH PHHPC Memorandum") for an operating permit proceeding in February 2019,

Post Acute Partners "owns, operates and develops healthcare facilities across the United States,

including skilled nursing facilities, assisted living facilities, pediatric specialty care hospitals,

home health agencies and institutional pharmacies."  DOH Project #181059-E, Exhibit Page 5.

Post Acute Partners is jointly owned by Cole and Rubin, who are its only members.

67.     Post Acute Partners is a privately-owned company that invests in healthcare

facilities and other related businesses.  Its two partners, Cole and Rubin, have long been in the

business of providing investment funding for healthcare entities.  As the DOH PHHPC

Memorandum states, for example, "[p]rior to founding Post Acute Partners, LLC[,] Mr. Cole was

involved with Care Venture, Inc., *an investment firm* which acquires operational and real estate interests in nursing homes and provides financing to health care facilities throughout the United States." *Id.* at page 5 (emphasis added).   Likewise, prior to founding Post Acute Partners, Dr. Jeffrey Rubin was Executive Vice President of Business Development for Care One Management, LLC/Healthbridge Management, LLC, a multi-tiered health care investment network.  Prior to that, he was President of Millennium Healthcare, Inc., the precursor to Care One.

68.     In 2013, Post Acute Partners purchased substantially all of Elderwood Senior Care, a Buffalo-based senior care company that owned skilling-nursing facilities, assisted living residences, independent living communities, and an institutional pharmacy.  Elderwood Senior Care was founded in 1978 and by 2013, at the time of its acquisition by Post Acute Partners, had 19 facilities located in Western and Central New York that employed more than 2,000 people and had 5,000 patients and residents at its facilities.  At the time of the purchase of Elderwood, Post Acute Partners already had a substantial number of facilities in New York, Rhode Island, Pennsylvania and Massachusetts, including five pediatric specialty hospitals in Pennsylvania, two skilled nursing facilities in Rhode Island, and a home-care agency and institutional pharmacy in Massachusetts.  According to an article posted on Post Acute Partners' website, at the time of the acquisition, Cole stated that, "This acquisition positions Post Acute Partners to become the largest and most fully integrated provider in upstate New York."  Post Acute Partners kept the Elderwood name.

69.     Between 2013 and the present, Post Acute Partners continued to expand its chain of nursing homes, assisted living facilities and independent living facilities, among other healthcare businesses.  According to an article dated July 14, 2019 published in *Skilled Nursing*

*News* that is posted on Post Acute Partners' website, "the Elderwood chain" had been "on an acquisition kick in the upstate New York region" during the prior 12 months, "with purchases ranging from assisted living to skilled nursing – and backing from a corporate parent," namely Post Acute Partners.

70.     Discussing one of its most recent acquisitions, which, according to the article, came on the heels of numerous others, Cole described the acquisition in investment terms.  He stated that Post Acute Partners was "introduced to the opportunity really from a capital structure point of view" and that Post Acute Partners "[had] surplus capital," which made the transaction particularly attractive to it.  In addition to describing the acquisition in investment terms, Cole also noted the breadth of Post Acute Partners' acquisitions.  "When we look at an opportunity for acquisition, what we ask ourselves is:  Does this acquisition enhance our geographic footprint, so that it's not duplicative to another facility that we have, so that we're able to extend the Elderwood brand into geographies that don't yet benefit from it?"  Cole said, according to the article.

71.     The DOH PHHPC Memorandum relates to an application from a company called 2700 North Forest Road Operating Company, LLC, d/b/a Elderwood at Getzville, which was an LLC in the Post Acute Partners/Elderwood chain of facilities.  The application was submitted by 2700 North Forest Road Operating Company, LLC, for approval from the DOH to be established as the new operator of an established nursing home in Getzville, New York, that had been purchased by Post Acute Partners during its "acquisition kick in the upstate New York region."  The memorandum, which is based on an application filed under oath by Cole and Rubin and/or their agents, states that Cole and Rubin jointly own the following New York State nursing homes:

Elderwood at Hamburg
Elderwood at Liverpool
Elderwood at Amherst
Elderwood at Grand Island
Elderwood at Wheatfield
Elderwood at Lancaster
Elderwood at Cheektowaga
Elderwood at Williamsville
Elderwood of Uihlein at Lake Placid
Elderwood of Waverly
Elderwood of Hornell
Elderwood of Lakeside at Brockport
Elderwood at Ticonderoga
Elderwood at Lockport
Elderwood at North Creek

This listing of Cole- and Rubin-owned properties is consistent with the properties listed on other

applications by Elderwood facilities for operating licenses from DOH, as well as with Post Acute

Partners' website.

72.     The memorandum further states that Cole and Rubin, as joint owners, also own

the following nursing homes outside of New York:

Elderwood at Riverside, in Rhode Island
Elderwood at Scallop Shell at Wakefield in Rhode Island
Elderwood at Burlington in Vermont
Elderwood Senior Living at Lancaster in Pennsylvania

Again, this listing of Cole- and Rubin-owned properties is consistent with the properties listed on

other applications by Elderwood facilities for operating licenses from DOH, as well as with Post

Acute Partners' website.

73.     In addition, the DOH PHHPC Memorandum indicates that Cole and Rubin, as

joint owners, own the following assisted living facilities in New York State:

Elderwood Village at Ticonderoga
Elderwood Village at Williamsville
Elderwood Assisted Living at Wheatfield
Elderwood Assisted Living at West Seneca
Elderwood Assisted Living at Cheektowaga

Elderwood Assisted Living at Hamburg
Elderwood Assisted Living at Waverly
Elderwood Assisted Living at Tonawanda

This listing of Cole- and Rubin-owned properties is also consistent with the properties listed on

other applications by Elderwood facilities for operating licenses from DOH, as well as with Post

Acute Partners' website.

74.     In addition, the DOH PHHPC memorandum states that Cole and Rubin own

Elderwood Administrative Services, LLC; and Post Acute Partners Management, LLC.  These

businesses, Elderwood Development LLC, and Elderwood Staffing Solutions, LLC, are also

included as members of the Post Acute Partners family of companies on the Post Acute Partners

website.

75.     In addition, the DOH PHHPC memorandum states that Cole and Rubin also own

Woodmark Pharmacy of New York, LLC, an institutional pharmacy; and six pediatric specialty

care facilities in Pennsylvania.  This information is also consistent with other applications to

DOH by Elderwood facilities for operating licenses from DOH, as well as with Post Acute

Partners' website, among the websites of the other companies in the Post Acute Partners' family

of companies.

76.     Moreover, Post Acute Partners' website includes several other companies as part

of the Post Acute Partners family of companies that do not appear on the DOH memorandum,

including Elderwood Transportation, a transportation company; Post Acute Consulting, a

consulting company; Elderwood Health Plan, a Managed Medicaid health plan; and Elderwood

Home Care, a home care services company, as well as the Elderwood assisted living facilities

that were purchased by Post Acute Partners in April 2019.

77.    As is also apparent from the DOH PHHPC memorandum, the Elderwood facilities

have a background of extensive violations and fines levied by DOH, with some of the facilities

receiving the lowest and second-lowest ratings possible (one or two stars out of a possible five

stars) on the rating scale set by the federal Centers for Medicare and Medicaid Services

("CMS").  A number of the Elderwood facilities have been assessed civil money penalties and/or

other fines, including Elderwood at Ticonderoga, Elderwood at Amherst, Elderwood at Grand

Island, Elderwood at Waverly, Elderwood at Williamsville, Elderwood Assisted Living at

Waverly, and Elderwood Assisted Living at Wheatfield.  One of the facilities, Elderwood at

Grand Island, was found to have a deficiency under NYCRR 483.12(b)(1), which relates to

"abuse, neglect and exploitation of residents and misappropriation of resident property."

Another, Elderwood at Waverly, was a fine for "an Immediate Jeopardy (IJ) –F-678-Cardio-

Pulmonary Resuscitation."  *Id.* at p. 10.

**B.    PPP Loans to the Post Acute Partners Family of Companies**

78.    Despite the private equity/investment company nature of Post Acute Partners, its

highly capitalized structure, its easy access to liquidity, and the extensive size and reach of the

Post Acute Partners chain of facilities and related businesses, at least 29 of the Elderwood

nursing home and assisted living facilities, Post Acute Partners' three Woodmark Pharmacy

companies, and nine of the Post Acute Partners/Elderwood/Pediatric Specialty Care

management, consulting, administrative,  and staffing companies applied for and received PPP

loans.

79.    The applications were submitted through each of the 29 Elderwood facilities'

operating companies, by the three Woodmark Pharmacy companies, and by the nine Post Acute

Partners/Elderwood/Pediatric Specialty Care management, consulting, administrative and

staffing companies, in some instances through their operating companies.  The loans were

approved on April 27-28, 2020 for specific amounts, but rather than reporting those amounts,

SBA reported the loans in its reports on the PPP program in a "range," stated as a "minimum and

maximum, ostensibly to protect the borrower's privacy.[156]  *See*, *e.g.*, SBA's Paycheck Protection

Program (PPP) Loan Data – Key Aspects –Updated August 20, 2020 (SBA PPP Loan Data

August Update).[157]

      80.    Rather than applying to a single lender for PPP loans, the Post Acute

Partners/Elderwood/Pediatric Specialty Care companies split their loan applications amongst

three different banks –Bank Leumi USA, based in Tel Aviv, Israel; CFG Community Bank,

based in Maryland; and People's United Bank, National Association, based in Bridgeport,

Connecticut.  Twenty-four of the forty-one Post Acute Partners companies' PPP loan

applications were submitted to and approved by Bank Leumi, USA, where Cole is a member of

the board of directors.

      81.    Based on the reported minimum and maximum amounts, the total amount of the

loans dispersed to the Post Acute Partners family of companies from the PPP was at least $26.15

million to $60.55 million, just for the Post Acute Partners entities that could be identified in the

SBA's PPP loan data reports.[158]  The Elderwood nursing homes/skilled nursing facilities

received the following PPP loans:

---

[156] *See* note 1 above.

[157] The SBA has stated that "SBA is committed to ensuring that any release of PPP loan data
does not harm small businesses or their employees."  *Id.*  SBA further stated that "[i]n releasing
PPP loan data to the public, SBA is maintaining a balance between providing transparency to
American taxpayers and protecting small businesses' confidential business information, such as
payroll, and personally identifiable information."  *Id.*

[158] There may be additional PPP loans that the Post Acute Partners companies applied for, were
approved for, and received, other than the loans specified in this Complaint.  Because the Post
Acute Partners companies applied for the loans in many cases through various operating

| Name of Facility | Amount of PPP Loan | Loan Approval Date |
|---|---|---|
| Elderwood at Hornell | $1-2 million | April 28, 2020 |
| Elderwood at Ticonderoga | $350,000 - $1 million | April 28, 2020 |
| Elderwood at Lockport | $1-2 million | April 27, 2020 |
| Elderwood at North Creek | $350,000 - $1 million | April 27, 2020 |
| Elderwood of Lakeside at Brockport | $1-2 million | April 27, 2020 |
| Elderwood at Lancaster | $1-2 million | April 27, 2020 |
| Elderwood of Uihlein at Lake Placid | $1-2 million | April 28, 2020 |
| Elderwood at Williamsville | $2-5 million | April 27, 2020 |
| Elderwood at Cheektowaga | $1-2 million | April 27, 2020 |
| Elderwood at Wheatfield | $1-2 million | April 28, 2020 |
| Elderwood at Grand Island | $350,000-$1 million | April 28, 2020 |
| Elderwood at Waverly | $2-5 million | April 27, 2020 |
| Elderwood at Amherst | $1-2 million | April 27, 2020 |
| Elderwood at Liverpool | $2-5 million | April 27, 2020 |
| Elderwood of Scallop Shell at Wakefield | $1-2 million | April 27, 2020 |
| Elderwood at Hamburg | $1-2 million | April 27, 2020 |
| Elderwood at Burlington | $1-2 million | April 28, 2020 |

The Elderwood assisted living facilities received the following PPP loans:

| Name of Facility | Amount of PPP Loan | Loan Approval Date |
|---|---|---|
| Elderwood Assisted Living at Tonawanda | $350,000-$1 million | April 28, 2020 |
| Elderwood Village at Bassett Park | $350,000-$1 million | April 28, 2020 |
| Elderwood Village at Williamsville | $350,000-$1 million | April 27, 2020 |
| Elderwood Assisted Living at West Seneca | $350,000-$1 million | April 27, 2020 |
| Elderwood Assisted Living at Hamburg | $350,000-$1 million | April 27, 2020 |
| Elderwood Village at Greece | $150,000-$350,000 | April 28, 2020 |
| Elderwood Assisted Living at Cheektowaga | $150,000-$350,000 | April 27, 2020 |
| Elderwood Assisted Living at Wheatfield | $150,000-$350,000 | April 27, 2020 |

companies, it may be difficult to trace those companies back to Post Acute Partners in a review of the PPP loan reports.

| Elderwood Assisted Living at Waverly | $150,000-$350,000 | April 27, 2020 |
| Elderwood Village at Vestal | $150,000-$350,000 | April 27, 2020 |
| Elderwood Village at Colonie | $150,000-$350,000 | April 28, 2020 |
| Elderwood Village at Fairport | $150,000-$350,000 | April 28, 2020 |

The Post Acute Partners/Elderwood management, administrative, development and staffing

companies received the following PPP loans:

| Name of Company | Amount of PPP Loan | Loan Approval Date |
| --- | --- | --- |
| Post Acute Partners Management, LLC | $150,000-$350,000 | April 27, 2020 |
| Elderwood Administrative Services, LLC | $2-5 million | April 27, 2020 |
| Elderwood Development, LLC | $150,000-$350,000 | April 27, 2020 |
| Elderwood Staffing Solutions, LLC | $150,000-$350,000 | April 27, 2020 |

The Woodmark Pharmacy companies received the following PPP loans:

| Name of Company | Amount of PPP Loan | Loan Approval Date |
| --- | --- | --- |
| Woodmark Pharmacy of CT, LLC | $150,000-$350,000 | April 28, 2020 |
| Woodmark Pharmacy of Massachusetts, LLC | $150,000-$1 million | April 28, 2020 |
| Woodmark Pharmacy of New York, LLC | $150,000-$1 million | April 28, 2020 |

The Pediatric Specialty Care management, consulting, administrative and staffing companies

received the following PPP loans:

| Name of Company | Amount of PPP Loan | Loan Approval Date |
| --- | --- | --- |
| PP Pediatric Management LP | $150,000-$350,000 | April 27, 2020 |
| 3300 Henry Avenue Operating Company LP | $1-2 million | April 28, 2020 |
| 120 Rider Avenue Operating Company LP | $350,000-$1 million | April 27, 2020 |

| 120 Rider Avenue PCH Operating Company LP | $150,000-$350,000 | April 27, 2020 |
| 2900 Johnson Street Operating Company LP | $350,000-$1 million | April 27, 2020 |

82.     Defendants were disbursed the funds by no later than May 8, 2020.  Regulations promulgated by the SBA pursuant to the PPP provide that PPP loans must be disbursed within 10 days of approval, starting on April 28, 2020.  *See* 85 Fed. Reg. 26322, 26323 (May 4, 2020) (stating that "a lender must make a one-time full disbursement of the PPP loan within ten calendar days of loan approval" (which, if it falls on a weekend day or on a holiday, will be the next business day thereafter) and that the "ten calendar day period . . . begins on April 28, 2020").  Thus, in the case of the loans at issue in this Complaint, which were approved on April 27 and 28, 2020 (depending on the loan, and as set forth in detail above), the loans were disbursed starting April 27/28 and no later than May 8, 2020.

83.     Although the SBA built a great deal of flexibility into the PPP loan program to allow a borrower to cancel a PPP loan or return it without any consequences during a period denominated a "safe harbor," the Post Acute Partners companies did not avail themselves of this opportunity.   As of August 8, 2020, the last date for which data is available from the SBA regarding currently outstanding PPP loans, the Post Acute Partners companies' loans were all still active and had not been canceled or returned within the time-period of the safe harbor. Therefore, the Post Acute Partners companies are liable for the fraud they perpetrated on the PPP program and must pay the consequences of that fraud.

**C.     The Post Acute Partners and Elderwood Companies Were Not Eligible for the PPP Loans**

84.     The Post Acute Partners and Elderwood companies that applied for and received PPP loans were not eligible for those loans under any of the criteria for small businesses set forth

under the CARES Act and the SBA's regulations and guidance.  As discussed above at page 49,

a business must meet one of the following tests to be eligible for a PPP loan:

> 1)  It must have 500 or fewer employees, including both its own and its affiliates'
> employees.
>
> 2)  Without including its affiliates, it must meet the SBA's definition of a small business
> in its primary industry and, together with its affiliates, it must meet the definition of a
> small business in its primary industry or the primary industry of itself and its affiliates on
> a combined basis, whichever definition is more restrictive.
>
> 3)  Together with its affiliates, it must have had $15 million or less of tangible net worth
> as of March 27, 2020, and $5 million or less of average net income after federal income
> taxes (excluding carry-over losses) for the last two full fiscal years before the date of
> application for a PPP loan.

13 C.F.R. § 121.301(f).  Businesses are defined as "affiliates" when one "concern or entity"

owns or "controls or has the power to control the other, or a third party or parties controls or has

the power to control both."  13 CFR § 121.301(f).

85.     Cole and Rubin and/or Post Acute Partners own and/or control each of the

defendant companies that applied for and received a PPP loan and the companies are all

affiliated under the regulations.  When the affiliates are considered together, they fail to meet the

criteria for PPP loans as a small business by orders of magnitude.

> **a)    Post Acute Partners and the Other Defendant Companies in this
> Complaint are Affiliated Companies**

86.     Both government sources and Post Acute Partners' own website show that Cole

and Rubin and/or Post Acute Partners are the owners of the defendant companies in this

Complaint and that the companies are therefore affiliated under the SBA's regulations relating to

the PPP.

87.     CMS's website of data on nursing homes (skilled nursing facilities) indicates that

the 17 Elderwood nursing homes that are defendants in this case are owned 50% by Cole and

50% by Rubin (in some cases through a holding company).[159]  *See*

https://data.medicare.gov/Nursing-Home-Compare/Ownership/y2hd-n93e/data.

88.     Likewise, the 2018 DOH PHHPC Memorandum relating to Post Acute Partners'

application for an operating license for Elderwood at Getzville in New York, states that Post

Acute Partners' application for an operating license for the facility described the Elderwood

chain of nursing homes and assisted living facilities (referred to as "residential health care

facilities" or "RHCFs") as "affiliated RHCFs."  *See* DOH PHHPC Memorandum at page 15.

The DOH PHHPC Memorandum states that "Mr. Cole and Dr. Rubin have . . . [a] joint

ownership interest" in the Elderwood chain of facilities, including those listed as defendants in

this Complaint (both the nursing homes and the assisted living facilities), among others, as well

as the other defendant companies that had already been acquired by Cole and Rubin by 2018,

when the DOH PHHPC Memorandum was prepared.

89.     With respect to all of those defendants as well as the more recently acquired

assisted living facilities and other defendants, the Post Acute Partners website acknowledges that

they are owned and affiliated with Cole and Rubin and Post Acute Partners.  Post Acute

Partners' website states as follows: "Privately owned by Warren Cole and Dr. Jeffrey Rubin,

Post Acute Partners strives to provide the continuum of post acute services.  By co-owning

multiple business lines and settings across the continuum, we can eliminate silos, which enables

intense provider collaboration and seamless transitions for residents."  The multiple business

lines, as set forth on Post Acute Partners' website, include the Elderwood nursing homes and

assisted living companies, the Woodmark Pharmacy companies, and the Post Acute

---

[159] CMS does not provide publicly available data on ownership of the other companies that are
defendants in this case, including the assisted living facilities.

Partners/Elderwood/Pediatric Specialty Care management and consulting companies that applied

for and received the PPP loans.  Each of these nursing homes, assisted living companies,

pharmacies, and management/consulting companies is owned by Cole and Rubin either directly

or indirectly and is included in the Post Acute Partners corporate group.

                      **b)**       **The Affiliated Post Acute Partners Companies Far Exceed the 500-Employee Test for a Small Business**

        90.      Considering the size of the Post Acute Partners conglomerate, including dozens of

related companies, the affiliated Post Acute Partners/Elderwood/Woodmark Pharmacy/Pediatric

Specialty Care corporate group – not surprisingly -- has far more than 500 employees.  In their

applications for PPP loans, the 29 Elderwood nursing home and assisted living facilities, the

three Woodmark Pharmacy companies and the nine Post Acute Partners/Elderwood/Pediatric

Specialty Care management, administrative, consulting and staffing companies listed 4,227 jobs

that would purportedly "be retained" as a result of receiving the PPP loans.[160]  The facilities in

the Elderwood chain of nursing homes, assisted living facilities and other Post Acute Partners

companies that are not defendants in this case  – including the health plan, home health

company, and transportation company, among many others – also have at least hundreds and

more likely thousands of additional employees.  Accordingly, Defendants, as affiliated

companies, do not meet the "500 or fewer employees" test for a small business under the

CARES Act or its regulations or guidance.

---

[160] According to the SBA reports, certain of the defendant companies stated in their application for PPP loans that no jobs would be retained as a result of receiving the PPP loans.  This includes Elderwood at Liverpool, Elderwood Administrative Service, LLC; and PP Pediatric Management LP.  Even aside from the other issues raised in this Complaint, it is not clear why these companies would have been approved for loans under the PPP, which was intended to provide funds to enable companies to retain employees during the pandemic.

c)   **The Affiliated Post Acute Partners/Elderwood/Woodmark Pharmacy/Pediatric Specialty Care Family of Companies Do Not Meet the SBA's Test of a Small Business in its Primary Industry**

91.     Nor do the affiliated Post Acute Partners/Elderwood/Woodmark Pharmacy/Pediatric Specialty Care family of companies meet the SBA's test of a small business in its primary industry.  The SBA's size standards for small businesses in each industry are set forth in the SBA's Table of Small Business Size Standards Matched to North American Industry Classification System Codes ("NAICS Table") (Aug. 19, 2019).  The NAICS Table sets size standards for the healthcare industry based on annual receipts in millions of dollars.  Based on this table, a small business nursing care (skilled nursing) facility is a facility with no more than $30 million in annual receipts.  A small business "assisted living facility for the elderly" is a facility with no more than $12 million in annual receipts.

92.     The Post Acute Partners/Elderwood/Woodmark Pharmacy/Pediatric Specialty Care affiliated family of companies do not meet this standard for a small business.  Based on the 2018 cost reports submitted to DOH by just 15 of the 29 Elderwood nursing homes[161], those 15 homes – which are a small subset of the Post Acute Partners network of nursing homes, assisted living facilities, pediatric care facilities, pharmacies, management firms, consulting firms, staffing firms, home health care, transportation and health plan companies – had revenue of more than $200 million, nearly an order of magnitude more than the size standard under the NAICS for a small business in the nursing home category.  The self-reported revenue of the 15 Elderwood nursing homes for which cost reports could be obtained were as follows for 2018:

---

[161] In New York State, nursing homes are required to submit cost reports to NYS DOH on an annual basis.  The most recent publicly available cost reports are for the 2018 year.  It is likely that more than fifteen of the Elderwood nursing homes submitted cost reports for the 2018 year; however, only fifteen of the nursing homes' cost reports were obtainable from public records at the time of this Complaint.

| Nursing Home Facility | Revenue |
|---|---|
| Elderwood at Hornell | $11,558,882 |
| Elderwood at Lockport | $10,166,143 |
| Elderwood at North Creek | $6,737,098 |
| Elderwood of Lakewise at Brockport | $12,703,656 |
| Elderwood at Lancaster | $11,714,174 |
| Elderwood of Uihlein at Lake Placid | $8,342,022 |
| Elderwood at Williamsville | $24,727,762 |
| Elderwood of Cheektowaga | $18,785,987 |
| Elderwood Amherst | $11,329, 985 |
| Elderwood at Grand Island | $9,294,665 |
| Elderwood at Waverly | $21,901,236 |
| Elderwood at Wheatfield | $13,076,133 |
| Elderwood at Liverpool | $20,000,044 |
| Elderwood of Scallop Shell at Wakefield | $10,023,563 |
| Elderwood at Hamburg | $17,302,239 |
| **TOTAL** | **$207,664,289** |

      **d)**     **The Affiliated Post Acute Partners/Elderwood/Woodmark Pharmacy/Pediatric Specialty Care Family of Companies Do Not Meet the SBA's Alternative Test of $15 Million or Less of Tangible Net Worth, and $5 Million or Less of Average Net Income After Federal Income Taxes for the Last Two Fiscal Years Before the Date of Application for a PPP Loan**

93.     In addition, the Post Acute Partners companies, including the Elderwood chain of

companies, the Woodmark Pharmacy companies, and the Post Acute

Partners/Elderwood/Pediatric Specialty Care management, consulting, administrative and staffing companies, failed to meet the SBA's alternative test for eligibility. The Post Acute Partners companies had net worth that greatly exceeded the alternative test of $15 million or less of tangible net worth and $5 million or less of average net income after federal income taxes for the last two fiscal years before the date of application for a PPP loan.

94. Based on just 15 of the Elderwood facilities that self-reported their financial information to the NYS DOH as required by law, Post Acute Partners had at least $20.8 million in net tangible net worth. This amount of net worth – for just a fraction of the Post Acute Partners companies – exceeds the level required to be eligible as a small business for PPP loans.

95. The net worth of 15 of the nursing homes in the 29-facility Elderwood chain, as self-reported for the 2018 calendar year, was as follows:

| Nursing Home Facility | Revenue | Net Worth |
|---|---|---|
| Elderwood at Hornell | $11,558,882 | $1,973,484 |
| Elderwood at Lockport | $10,166,143 | $394,059 |
| Elderwood at North Creek | $6,737,098 | $2,789.063 |
| Elderwood of Lakeside at Brockport | $12,703,656 | $1,862,100 |
| Elderwood at Lancaster | $11,714,174 | -$7,431,266 |
| Elderwood of Uihlein at Lake Placid | $8,342,022 | $184,425 |
| Elderwood at Williamsville | $24,727,762 | $7,200,754 |
| Elderwood of Cheektowaga | $18,785,987 | $5,612,987 |
| Elderwood Amherst | $11,329, 985 | $4,099,260 |
| Elderwood at Grand Island | $9,294,665 | $1,940,267 |
| Elderwood at Waverly | $21,901,236 | $4,165,888 |

| | | |
|---|---|---|
| Elderwood at Wheatfield | $13,076,133 | -$12,129,803 |
| Elderwood at Liverpool | $20,000,044 | $5,189,028 |
| Elderwood of Scallop Shell at Wakefield | $10,023,563 | -$128,759 |
| Elderwood at Hamburg | $17,302,239 | $5,206,442 |
| **TOTAL** | **$207,664,289** | **$20,891,929** |

96.     Thus, Defendants do not qualify as a small business under the alternative test set

forth in the SBA regulations under the PPP.

> **D.     The Post Acute Partners Group of Companies Received PPP Loan
> Amounts That Exceeded the $20 Million Borrowing Limit for a Corporate
> Group of Companies**

97.     As discussed above at pages 50-51, on April 30, 2020, the SBA established a $20

million limit for loans to businesses that are majority owned, directly or indirectly, by a common

parent.  *See* IFR #7 § 1, 85 Fed. Reg. 26324, 26325 (May 4, 2020).  The SBA regulations

provide that "businesses that are part of a single corporate group **shall in no event** receive more

than $20,000,000 of PPP loans in the aggregate."  *Id.*  (emphasis added).  The regulations further

state that "[f]or purposes of this limit, businesses are part of a single corporate group if they are

majority owned, directly or indirectly, by a common parent."  Moreover, the regulations state

that "[b]usinesses are subject to this limitation even if the businesses . . . are otherwise not

considered to be affiliates under the SBA's affiliation rules."  *Id.*

98.     The 29 Elderwood nursing homes and assisted living facilities, along with the

three Woodmark Pharmacy companies and the Post Acute Partners/Elderwood/Pediatric

Specialty Care management, consulting, administrative and staffing companies that applied for

and were approved for PPP loans, collectively were disbursed at least $26.15 million to $60.55

million in funds.  These companies are part of a corporate group owned by Cole and Rubin

and/or Post Acute Partners, as shown in the SBA PPP loan reports and the DOH PHHPC

Memorandum discussed at pages 58-63 above.  Even if these companies had not met the SBA's

test for affiliation – and they do, as discussed above at pages 58-63 and 67-70 above – they have

exceeded the $20 million limit for PPP loans to a single corporate group.

### E.   The Post Acute Partners Companies Submitted Fraudulent Certificates of Necessity for the PPP Loans

99.     In addition to falsely claiming eligibility for the PPP loans, despite the large size

of their affiliated companies, and violating the SBA guidance by exceeding the borrowing limit

under the PPP, the Post Acute Partners companies also fraudulently certified in their applications

for the loans that "[c]urrent economic uncertainty makes this loan request necessary to support

the ongoing operations of the Applicant."  *See* SBA FAQ #31.  As the SBA has stated in its

FAQs regarding the PPP, "[b]orrowers must make this certification in good faith, taking into

account their current business activity and their ability to access other sources of liquidity

sufficient to support their ongoing operations in a manner that is not significantly detrimental to

the business."  SBA FAQ Question 31.[162]  The Post Acute Partners family of applicants could

not make this certification in good faith.

100.     Cole and Rubin and Post Acute Partners have admitted to having extensive capital

resources and liquidity.  As discussed above, in a July 2019 article in *Skilled Nursing News*, Cole

is quoted as saying that Post Acute Partners "[had] surplus capital."  Likewise, financial

---

[162] As the SBA stated in answer to FAQ #31: "For example, it is unlikely that a public company with substantial market value and access to capital markets will be able to make the required certification in good faith, and such a company should be prepared to demonstrate to SBA, upon request, the basis for its certification."

statements regarding the Post Acute Partners companies referenced in the DOH PHHPC

Memorandum state that the Elderwood nursing homes and other facilities "have access to

revolving credit lines that cover temporary negative working capital balances." *See* page 15 of

the memorandum.

101.    In addition to these resources, the Post Acute Partners companies also received

millions in distributions from the U.S. Department of Health and Human Services from the

CARES Act Provider Relief Fund, including more than $4 million prior to the date on which the

Post Acute Partners companies applied for the forgivable PPP loans.  According to the HHS

website, the Post Acute Partners companies received the following in distributions from the

CARES Act Provider Relief Fund, prior to August 27, 2020[163]:

| Name of Facility | HHS Distributions to Healthcare Providers Under the CARES Act Prior to the August 27, 2020 Distribution |
|---|---|
| Elderwood at Williamsville | $1,321,577.49 |
| Elderwood at Waverly | $1,266.852.12 |
| Elderwood at Cheektowaga | $1,088,928.68 |
| Elderwood at Liverpool | $1,086,407.15 |
| Elderwood at Hamburg | $1,056,090.55 |
| Elderwood of Uihlein at Lake Placid | $839,213.42 |
| Elderwood at Wheatfield | $786,949.31 |
| Elderwood at Lockport | $777,684.47 |

[163] According to HHS's website, on August 27, 2020, an additional distribution was made to nursing homes in the amount of $2.5 billion.  HHS has not yet released information regarding this distribution other than the aggregate amount.

| | |
|---|---|
| Elderwood of Lakeside at Brockport | $768,220.71 |
| Elderwood at Burlington | $755,909.23 |
| Elderwood at Lancaster | $662,093.37 |
| Elderwood at Amherst | $643,831.23 |
| Elderwood at Grand Island | $594,870.91 |
| Elderwood at Ticonderoga | $520,166.47 |
| Elderwood at North Creek | $485,654.25 |
| Elderwood of Scallop Shell at Wakefield | $450,475.60 |
| Elderwood at Hornell | $766,465.17 |
| **TOTAL** | **$13,871,390.13** |

> **F.      Post Acute Partners is a Private Equity Firm and thus its Daughter Companies are Prohibited from Getting Loans Through the PPP**

102.     Post Acute Partners is prohibited from obtaining PPP loans under the PPP regulations because it is a private equity company.  SBA has taken the position that "[h]edge funds and private equity firms are primarily engaged in investment or speculation, and such businesses are . . . ineligible to receive a PPP loan."  IFR #4 Section 2(a).  Its daughter companies, the Elderwood chain of companies, the Woodmark Pharmacy companies, and the Post Acute Partners/Elderwood/Pediatric Specialty Care management, consulting, administrative and staffing firms that received the PPP loans are thus also prohibited from obtaining PPP loans. The regulations cast significant doubt on whether portfolio companies of a private equity company could certify that they are eligible small businesses, given the affiliation rules, or could certify truthfully that "[c]urrent economic uncertainly make this loan request necessary to support the ongoing operations of the Applicant."  IFR #4, 85 Fed. Reg. 23450, 23451 (April 28,

2020).  The Defendant Post Acute Partners family of companies were unable to make those certifications truthfully.  Rather, they obtained their PPP loans through fraudulent certifications.

## FIRST CAUSE OF ACTION

### (FCA, 31 U.S.C. §3729(a)(1)(A) – Presenting False Claims for Payment)

103.    Plaintiff-Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

104.    Plaintiff-Relator seeks relief against the Defendants under Section 3729(a)(1)(A) of the False Claims Act, 31 U.S.C. §3729(a)(1)(A).

105.    As set forth above, Defendants knowingly or acting with deliberate ignorance or with reckless disregard for the truth, presented, or caused to be presented, to an officer, employee or agent of the government, false and fraudulent claims in connection with applications for forgivable loans under the Paycheck Protection Program established by the CARES Act.

106.    Because of Defendants' fraudulent conduct, Defendants received forgivable loans through the Paycheck Protection Program that were guaranteed by the SBA.

107.    By reason of Defendants' false claims, the government has been damaged in a substantial amount to be determined at trial, and a civil penalty is required by law for each violation.

## SECOND CAUSE OF ACTION

### (False Claims Act, 31 U.S.C. §3729(a)(1)(B) - Creation or Use of False Statements or Records Material to a False Claim)

108.    Plaintiff-Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

109.    By virtue of the above-described acts, among others, Defendants knowingly or acting in deliberate ignorance or in reckless disregard of the truth, made, used, and caused to be

made and used, false records and statements material to a false or fraudulent claim in connection with applications for forgivable loans under the Paycheck Protection Program.

110.     Because of Defendants' fraudulent conduct, Defendants received forgivable loans from the Paycheck Protection Program that were guaranteed by the SBA.

111.     By reason of Defendants' false claims, the government has been damaged in a substantial amount to be determined at trial, and a civil penalty is required by law for each violation.

## THIRD CAUSE OF ACTION

### (False Claims Act, 31 U.S.C. §3729(a)(1)(G) – Reverse False Claims)

112.     Plaintiff-Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

113.     By virtue of the above-described acts, among others, by retaining PPP loan funds to which they were not entitled, Defendants have knowingly and improperly avoided or decreased an obligation to pay or transmit money to the United States, in violation of 31 U.S.C. § 3729(a)(1)(G).

114.     By reason of Defendants' false claims, the government has been damaged in a substantial amount to be determined at trial, and a civil penalty is required by law for each violation.

WHEREFORE, Plaintiff-Relator, on behalf of the Government, respectfully requests that judgment be entered in its favor and against Defendants as follows:

    a.     On the First Claim for Relief (Violation of the False Claims Act), treble the Government's damages in an amount to be determined at trial, such civil penalties as are required by law, and an award of costs;

    b.      On the Second Claim for Relief (Violation of the False Claims Act), treble the Government's damages in an amount to be determined at trial, such civil penalties as are required by law, and an award of costs;

    c.      On the Third Claim for Relief (Reverse False Claim), damages resulting from Defendants' failure to return to the United States funds to which they were not entitled; and

    d.      Such further relief as is proper.

Dated: New York, New York
       October 5, 2020

                          BY:    */s/ Heidi A. Wendel*
                                 HEIDI A. WENDEL (HW-2854)
                                 Law Office of Heidi A. Wendel PLLC
                                 43 West 43rd Street, Suite 184
                                 New York, NY 10036
                                 Tel. No.: (917) 854-1645
                                 hwendel@heidiwendellaw.com